## MATTER OF DASS

In Deportation Proceedings

A-24287341

*Decided by Board September 6, 1989*

(1) As an asylum applicant bears the evidentiary burden of proof and persuasion, where there are significant, meaningful evidentiary gaps, the applications ordinarily will be denied for failure of proof.

(2) While we adhere to the holding in *Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987), that the lack of corroboration for an asylum applicant's testimony will not necessarily be fatal to his application, this does not mean that the introduction of supporting evidence is purely an option with an asylum applicant in the ordinary case; the general rule is that such evidence should be presented if it is available.

(3) Background evidence may be needed to evaluate the credibility of an asylum applicant's testimony; as the basis for an asylum claim becomes less focused on specific events involving the alien personally and instead is more directed to broad allegations regarding general conditions in the alien's country of origin, corroborative background evidence to establish a plausible context for the claim may become essential, or alternatively an acceptable explanation for the absence of such evidence may become necessary.

(4) It was proper to conclude that the asylum applicant failed to establish a well-founded fear of persecution where his persecution claim was based on sweeping claims about persecution by the Government of India, as well as on the alien's testimony regarding his own circumstances, and he did not provide background evidence to corroborate the claims about the Government of India.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. § 1251(a)(2)]—Entered without inspection

ON BEHALF OF RESPONDENT:
Eric Beaudikofer, Esquire
910 South Fourth Street
El Centro, California 92243

ON BEHALF OF SERVICE:
Joseph M. Ragusa
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision dated January 18, 1984, an immigration judge found the respondent deportable as charged; denied his applications for asylum under section 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158 (1982), and withholding of deportation under section

243(h) of the Act, 8 U.S.C. § 1253(h) (1982); denied a request for the privilege of voluntary departure under section 244(e) of the Act, 8 U.S.C. § 1254(e) (1982); and ordered that the respondent be deported to India. The respondent has appealed. The appeal will be dismissed.

The respondent is a 30-year-old native and citizen of India. At deportation proceedings convened on November 17, 1983, he conceded deportability under section 241(a)(2) of the Act, 8 U.S.C. § 1251(a)(2) (1982), on the ground that he entered the United States without inspection on or about October 11, 1983. Proceedings were then continued to allow for the filing of an application for asylum. An application was filed and the immigration judge requested an advisory opinion from the Bureau of Human Rights and Humanitarian Affairs ("BHRHA") of the Department of State. Deportation proceedings reconvened on January 17, 1984, to consider the respondent's applications for asylum, withholding of deportation, and, in the alternative, voluntary departure.

To establish eligibility for withholding of deportation pursuant to section 243(h) of the Act, an alien's facts must show a clear probability of persecution in the country designated for deportation on account of race, religion, nationality, membership in a particular social group, or political opinion. *INS v. Stevic*, 467 U.S. 407 (1984). This means that the alien's facts must establish that it is more likely than not that he would be subject to persecution for one of the grounds specified. *Id.*

To establish eligibility for asylum under section 208 of the Act, an alien must meet the definition of a "refugee," which requires him to show persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A) (1982); section 208 of the Act. The burden of proof required to establish eligibility for asylum is lower than that required for withholding of deportation. *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987). An applicant for asylum has established that his fear is "well founded" if he shows that a reasonable person in his circumstances would fear persecution. *Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987). Further, asylum, unlike withholding of deportation, may be denied in the exercise of discretion to an alien who establishes statutory eligibility for the relief. *INS v. Cardoza-Fonseca, supra; Matter of Mogharrabi, supra.*

The respondent's persecution claim is based upon his claimed membership in a political party known as the "Dal Khalsa."[1]

---

[1] The BHRHA advisory opinion states that the "Akali Dal" and the "Dal Khalsa" are both factions of the largest Sikh party in India. These names, which were spelled phonetically in the transcript, were used interchangeably at the hearing.

According to his testimony, he joined that party when he was 17 years old, was a party member in India for 2 years, and was still a party member. His father also was a member of the party and had been so for approximately 20 years. Neither had ever been an officer of the Dal Khalsa. The objective of the party was to obtain independence for the State of Punjab in India. The respondent testified that the party did not advocate violence and that he and other party members were not involved in violent demonstrations. As a member of this party, he went to various villages with several other members and gave speeches to persuade people to join the party and assist in the efforts to obtain independence for Punjab. The respondent did this on more than 50 occasions. Approximately "six months or a year" before he left India, the respondent was arrested along with 10 other party members after giving a speech in a town in the district where he lived. They were told they were arrested for advocating violence "and if we stop they won't say anything to us." They denied that they were advocating violence. They were kept in jail overnight and were released because the authorities "were convinced that we didn't do anything wrong." He testified that based on information published in government newspapers, he believed that he would be kept in jail longer the next time if he continued his party activities. He continued making speeches after his arrest, but left India when the arrests became more frequent. He stated that he feared being arrested, jailed, or even killed if he returned to India. He indicated that his wife, who was also a party member, had not been harmed by the Government but stated that she was "probably lying at this time that she isn't [a party member]." He acknowledged that there had been violent demonstrations in India "with quite a destruction" in August 1982 but stated that the Akali Dal had not been responsible. He also testified that party members had been blamed for putting cows' heads in Hindu temples in May 1982 and for hijacking an airline flight in September 1981 but stated that others were doing this and blaming the Akali Dal.

The respondent further testified that he had received letters from his family stating that things in India were very bad. The last letter he received (approximately 7 months before the hearing) indicated that his father had been arrested. The respondent assumed that his father had been arrested on account of his political activities, but the letter did not explain why his father had been arrested or by whom. He did not have any of these letters in his possession and introduced no documentary evidence other than the asylum application itself.

The respondent also requested the privilege of voluntary departure in lieu of deportation in the event that his other requests were denied. During his testimony in this regard, he admitted that he had paid a smuggler $400 to cross the border from Mexico to the United States.

A BHRHA advisory opinion on the respondent's persecution claim was obtained pursuant to the requirements of 8 C.F.R. § 208.10(b) (1983). The opinion, which was expressed in a letter dated December 15, 1983, is that the respondent has not established a well-founded fear of persecution in India within the meaning of the United Nations Convention and Protocol Relating to the Status of Refugees.[2] According to a background statement attached to this letter, the campaign to win greater autonomy for Punjab is occurring within the framework of India's democratic institutions. Prior to the date of the advisory opinion, there had been very few arrests, even among the handful of extreme secessionists, and those arrests took place only in response to acts of violence. The background statement indicates that the Dal Khalsa faction, to which the respondent allegedly belongs, is an extreme fringe of this movement. It demands an independent Punjab state and advocates violence to achieve this end. Five members of this faction hijacked an Indian Airlines domestic flight to Lahore in September of 1981, for which they were awaiting trial in Pakistan. In May of 1982, the Government of India banned the Dal Khalsa after it placed severed cows' heads in Hindu temples, deliberately provoking mob violence. Dal Khalsa members have also been arrested on charges of murder. Nevertheless, constitutional safeguards protect everyone in India. The background statement concludes by stating that even the extremists arrested for alleged criminal acts receive the full protection of the law.

The immigration judge concluded that the respondent had not met his burden of proof with regard to asylum under section 208 of the Act or for withholding of deportation under section 243(h) and denied the respondent's applications for relief from deportation under those provisions of the Act. In this regard, the immigration judge observed that the respondent had not presented any objective evidence in support of his claims and and that his application was solely supported by his own testimony. The immigration judge also denied the respondent's request for voluntary departure in lieu of deportation. He found that the respondent had failed to establish that he was willing to leave the United States and additionally concluded that the respondent was unworthy of such discretionary relief in view of the fact that he had entered the United States surreptitiously with the assistance of a professional smuggler.

The respondent appealed, challenging the denial of his applications for asylum and withholding in very general terms, and submitting that

---

[2]United Nations Convention Relating to the Status of Refugees, July 28, 1951, 189 U.N.T.S. 150; United Nations Protocol Relating to the Status of Refugees, Jan. 31, 1967, [1968] 19 U.S.T. 6223, T.I.A.S. No. 6577, 606 U.N.T.S. 268.

the immigration judge "erroneously ignored my testimony that the lives of Dal Khalsa's are in danger only because I could not provide government publications." It is stated on the Notice of Appeal (Form I-290A) that "[b]ecause of my incarceration I could not produce them and such publications are widely known." The respondent also challenged the denial of voluntary departure and indicated that, if given the opportunity, he "could arrange for other countries to accept me since Indians can enter many nations without entry visas."

Before turning to the particular facts of this respondent's case, we note two preliminary matters. First, the general rule regarding the consideration of asylum applications by immigration judges and the Board, as with other matters in deportation and exclusion proceedings, is that they must be evaluated based on matters of record (i.e., based on the evidence introduced by the parties to the case under consideration). As the asylum applicant bears the evidentiary burden of proof and persuasion, where there are significant, meaningful evidentiary gaps, applications will ordinarily have to be denied for failure of proof. 8 C.F.R. §§ 208.5, 242.17(c) (1988).

Secondly, in determining whether an asylum applicant has met his burden of proof, we have recognized the difficulties that may be faced by aliens in obtaining documentary or other corroborative evidence to support their claims of persecution. Consequently, in *Matter of Mogharrabi, supra,* we held that the lack of such evidence will not necessarily be fatal to an application. We noted, as have various courts of appeals, that an alien's own testimony may in some cases be the only evidence available, and it can suffice where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his alleged fear. *See, e.g., Carvajal-Munoz v. INS,* 743 F.2d 562, 574 (7th Cir. 1984); *Matter of Mogharrabi, supra.* These cases, however, do not stand for the proposition that the introduction of supporting evidence is purely an option with an asylum applicant in the ordinary case. Rather, the general rule is that such evidence should be presented where available. *See Bolanos-Hernandez v. INS,* 767 F.2d 1277, 1285-86 (9th Cir. 1984) (comparing "lack of direct corroboration of specific threats" to general corroboration of "whether there is reason to take the threat seriously"); *Sarvia-Quintanilla v. INS,* 767 F.2d 1387, 1392 (9th Cir. 1985); *Carvajal-Munoz v. INS, supra; Sanchez v. INS,* 707 F.2d 1523, 1529 (D.C. Cir. 1983); *Matter of Mogharrabi, supra.* If an intelligent assessment is to be made of an asylum application, there must be sufficient information in the record to judge the plausibility and accuracy of the applicant's claim. Without background information against which to judge the alien's testimony, it may well be difficult to evaluate the credibility of the testimony. We note that this problem is

addressed in the Office of the United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees* para. 42 (Geneva, 1979) (*'Handbook'*), which includes the following observations:

> The applicant's statements cannot, however, be considered in the abstract, and must be viewed in the context of the relevant background situation. A knowledge of conditions in the applicant's country of origin—while not a primary objective—is an important element in assessing the applicant's credibility.

The *Handbook* further notes that an asylum applicant should "[m]ake an effort to support his statements by any available evidence and give a satisfactory explanation for any lack of evidence." *Id.* at para. 205(a)(ii).

Particularly when the basis of an asylum claim becomes less focused on specific events involving the respondent personally and instead is more directed to broad allegations regarding general conditions in the respondent's country of origin, corroborative background evidence that establishes a plausible context for the persecution claim (or an explanation for the absence of such evidence) may well be essential. The more sweeping and general a claim, the clearer the need for an asylum applicant to introduce supporting evidence or to explain its absence. Furthermore, there is a greater likelihood that corroborative evidence will be available if the claim is of longstanding, widespread persecution.

In addressing this respondent's appeal from the denial of his application for asylum, we note that there are two aspects to his testimony. First, he testified to factual matters involving himself personally (e.g., his activities and his arrest). Secondly, he testified in a far more general and conclusory manner regarding the situation, or his views of the general situation, concerning Dal Khalsa/Akali Dal members in India. As noted by the immigration judge, no supporting documentation or evidence of any kind was introduced in support of the claim.

The respondent clearly failed to establish a well-founded fear of persecution based on the evidence regarding his own circumstances. His testimony in this regard reflects that he was a member of the Dal Khalsa from the age of 17 until he left India in 1982. He was active in giving speeches and encouraging party membership. Over the entire period of his activities in India, the only incident with the police in which he was involved arose when he was accused of advocating violence along with 10 others, was detained overnight, and was released when the authorities were satisfied that he had not done anything wrong. Six months to a year later, he left India with nothing having occurred to him in the interim. He testified that he considered

articles in government newspapers threatening but did not indicate with any specificity what those articles stated. He testified that other party members were being arrested prior to his departure but provided no specific information on the reasons, circumstances, or consequences of such arrests. While denying any responsibility on the part of the Dal Khalsa or the Akali Dal, he acknowledged that inflammatory acts and violence were occurring in India in 1981 and 1982, acts which could cause legitimate governmental concern over those who were advocating or thought to be advocating violence. The respondent further testified that after he left India he received a letter advising him that his father had been arrested, but the letter did not reflect why the arrest occurred or who had arrested his father. He, in fact, had no evidence that any family member had been subjected to mistreatment by the Government. Even if his testimony were deemed "believable", it does not demonstrate facts on which a reasonable person would fear persecution on account of a basis protected by the Act.[3]

We do not find this application enhanced by the respondent's general allegations regarding conditions in India. He has not provided background evidence of any kind to corroborate his sweeping claim that the Government of India persecutes members of the Dal Khalsa or Akali Dal. This is, in fact, the sort of factual claim, which, if true, one would expect could be supported by corroborative evidence. The unexplained absence of such information may well indicate an exaggerated or unfounded claim. Moreover, we do not find any credible explanation for the absence of such supporting evidence in this case. The respondent states in his appeal statement that he could not get corroborating evidence, which includes, by his description, "widely known" government publications, because he was detained.

---

[3] We note that there are major gaps or inconsistencies in the chronology of events testified to by the respondent. The respondent testified that he was born in India in April 1959. He stated that he joined the Dal Khalsa when he was 17 years old (1976 or 1977), was a member of the party for 2 years in India, and was still a party member at the time of the deportation proceedings. He testified that he had been arrested about 6 months to a year before he left India in July or August 1982. The arrest would have been, at the earliest, in 1981, and the respondent would have been a member of the party for some 5 or 6 years when he left India, purportedly out of fear of persecution based on his then party membership. Additionally, the respondent testified that he lived in the village where he was born for 17 or 18 years and then was in Greece for 2 years or 18 months before coming to the United States via Mexico in 1983. He indicated on his asylum application that he was in Greece and Mexico for a total of some 19 to 20 months prior to his entry into the United States in October 1983. Alternatively, he stated on the Biographic Information (Form G-325A), filed with his asylum application, that he resided in his hometown in India from 1959 to 1983. These various stories leave unexplained gaps in his chronology from months, in some instances, to many years in others.

126

Respondent's counsel, however, entered an appearance in his case on October 14, 1983. The initial hearing was conducted on November 17, 1983, during which a continuance was granted to permit the filing of an application for asylum. The hearing on the merits was not conducted until January 17, 1984. Not only does the record not include any "widely known" supporting evidence, it does not reflect that any effort was ever made to obtain such information. Moreover, the information provided by the Department of State indicates to the contrary that members of the Dal Khalsa are punished only for criminal conduct and that this is done in accordance with the constitutional protections of the Indian system of criminal justice.

We conclude that the respondent has failed to establish a well-founded fear of persecution on account of his alleged political activities, and, therefore, that he has not established eligibility for asylum under section 208 of he Act. *Matter of Mogharrabi, supra.* We find further that in view of his failure to satisfy that burden of proof with respect to asylum, he also has failed to satisfy the higher burden of proof for withholding of deportation under section 243(h) of the Act. *Id.*

The respondent also has contended that his request for the voluntary departure privilege was denied erroneously on the basis of his unwillingness at the time of the hearing to leave immediately. He claims that he appeared unwilling to leave at that time because he was too ill to travel, and he anticipated that his asylum application would be granted. According to the respondent, he can arrange for his acceptance by some country, other than India, which will accept Indian nationals without entry visas.

The appeal from the denial of voluntary departure, however, does not address the immigration judge's discretionary denial of that relief. The record reflects that the respondent entered the United States with the assistance of a professional smuggler, and he has not established equities in his behalf which would warrant a favorable exercise of discretion in view of that serious adverse factor. *See Matter of Rojas,* 15 I&N Dec. 492 (BIA 1975). Consequently, we affirm the immigration judge's discretionary denial of the respondent's request for the privilege of voluntary departure.

Accordingly, the following order will be entered.

**ORDER:** The appeal is dismissed.