[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-17174
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 8, 2006
THOMAS K. KAHN
CLERK

BIA No. A96-085-310

ALEJANDRO ROBLES-QUECANO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(September 8, 2006)**

Before TJOFLAT, ANDERSON and BLACK, Circuit Judges.

PER CURIAM:

Alejandro Robles-Quecano petitions for review of the Board of Immigration Appeals' (BIA) order adopting and affirming an Immigration Judge's (IJ's) decision finding him ineligible for asylum and denying his application for withholding of removal under the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1158, 1231, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009 (1996) (amended by the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302 (2005)).[1] After review, we dismiss the petition in part, and deny the petition in part.

## I. DISCUSSION

### A. *Due Process Claim*

In his petition, Robles-Quecano first argues the proceedings before the IJ denied him due process of law. More specifically, Robles-Quecano claims the IJ's argumentative interrogation and partisan adjudication rendered the proceedings fundamentally unfair. The Government, in turn, asserts we lack subject matter jurisdiction over Robles-Quecano's due process claim because he failed to raise it in his notice of appeal or brief before the BIA.

---

[1] Because Robles-Quecano's removal and asylum proceedings commenced after April 1, 1997, the permanent provisions of IIRIRA govern his petition for review.

We review our subject matter jurisdiction de novo. *See Gonzalez-Oropez v. U.S. Att'y Gen.*, 321 F.3d 1331, 1332 (11th Cir. 2003). Generally speaking, we lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted his administrative remedies with respect thereto. *See* 8 U.S.C. § 1252(d)(1); *see also Sundar v. INS*, 328 F.3d 1320, 1323 (11th Cir. 2003) (opining the exhaustion requirement is jurisdictional, such that we "lack jurisdiction to consider claims that have not been raised before the BIA"). We have recognized, however, that "[s]ome courts have indicated in dicta that . . . some due process claims do not require exhaustion, because the BIA does not have the power to adjudicate those claims." *Sundar*, 328 F.3d at 1325. Nonetheless, "[t]hose same courts . . . have held that where the claim is within the purview of the BIA which can provide a remedy, the exhaustion requirement applies with full force." *Id.* Although we have never specifically determined which due process claims require exhaustion, other circuits have determined that procedural due process claims, as well as procedural errors argued in due process terms, must be raised before the BIA. *See, e.g., Vargas v. INS*, 831 F.2d 906, 908 (9th Cir. 1987) (holding due process claims predicated on procedural errors subject to exhaustion requirement).

Robles-Quecano's allegation of a due process violation—that he was denied

a full and fair hearing before a neutral factfinder—is precisely the kind of procedural error which requires exhaustion. *See, e.g.*, *Abduhlrahman v. Ashcroft*, 330 F.3d 587, 596 n.5 (3d Cir. 2003) (noting "[a]lthough grounded in procedural due process, a claim of IJ bias remains subject to administrative exhaustion"); *Sanchez-Cruz v. INS*, 255 F.3d 775, 780 (9th Cir. 2001) (same). Because Robles-Quecano failed to raise his due process claim before the BIA, we lack jurisdiction to consider it. Thus, we dismiss this part of his petition for lack of jurisdiction.

   B.    *Claims for Asylum and Withholding of Removal*

In his petition, Robles-Quecano raises a number of issues in asserting the IJ and BIA erred by denying his claim for asylum and withholding of removal. In response, the Government argues that we lack jurisdiction to consider Robles-Quecano's claim insofar as he seeks review of his asylum claim. With respect to Robles-Quecano's claim for withholding of removal, the Government asserts substantial evidence supports the IJ's and BIA's decisions and denial of relief was, therefore, appropriate.

   1.    Asylum Claim

To reiterate, we review our subject matter jurisdiction de novo. *See Gonzalez-Oropez*, 321 F.3d at 1332. Under 8 U.S.C. § 1158(a)(2)(B), an alien may not apply for asylum "unless the alien demonstrates by clear and convincing

4

evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." An asylum application filed after one year of the alien's arrival in the United States may, however, be considered "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified . . . ." 8 U.S.C. § 1158(a)(2)(D). Pursuant to 8 U.S.C. § 1158(a)(3), "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)." *See also Fahim v. U.S. Att'y Gen.*, 278 F.3d 1216, 1217 (11th Cir. 2002) (holding "federal courts do not have jurisdiction to review the Attorney General's decision as to the timeliness of . . . a request [for asylum]"). This jurisdiction stripping provision remains in effect after the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 310 (2005). *See also Chacon-Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 957 (11th Cir. 2005).[2]

In this case, both the IJ and BIA held that Robles-Quecano's asylum application was untimely and that he failed to establish changed or extraordinary

---

[2] While Robles-Quecano's case commenced before the enactment of the REAL ID Act of 2005, the jurisdictional provisions apply to his case. *See* REAL ID Act of 2005, § 106(b), Pub. L. No. 109-13, 119 Stat. 231, 311 (stating the jurisdictional provisions of § 1252(a)(2)(D) "shall take effect upon the date of the enactment" and shall apply to any case "in which the final administrative order of removal . . . was issued before, on, or after the date of the enactment").

circumstances excusing the untimely application. 8 U.S.C. § 1158(a)(3) deprives us of jurisdiction to review this determination, and, therefore, we dismiss Robles-Quecano's petition to the extent he seeks review of his asylum claim.

     2.    <u>Withholding of Removal</u>

Robles-Quecano raises several issues in arguing the IJ and BIA erred in denying him relief in the form of withholding of removal. He asserts, for instance, he established past persecution or a well-founded fear of future persecution based on political opinion, his testimony was sufficiently detailed so as to obviate the need for corroborating evidence, and the IJ applied the wrong legal standard. The Government counters that considering the record, the generalized and vague nature of Robles-Quecano's testimony, and the higher standard for withholding of removal, substantial evidence supports a finding that Robles-Quecano did not meet his burden of showing eligibility for such relief.

Where the BIA issues a decision, we review that decision, except to the extent that it expressly adopts the IJ's opinion. *See Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Insofar as the BIA adopts the IJ's reasoning, we review the IJ's decision as well. *See Prado-Gonzalez v. INS*, 75 F.3d 631, 632 (11th Cir. 1996). In this case, the BIA adopted and affirmed the IJ's decision except to the extent the IJ held Robles-Quecano failed to establish a nexus

between his alleged political opinion and the treatment to which he was subjected. Thus, we review both the decisions of the BIA and IJ, insofar as the IJ's decision comports with the BIA's order.

We review the IJ's and BIA's determination that an alien is ineligible for withholding of removal under a "substantial evidence" test. *See Arboleda v. U.S. Att'y Gen.*, 434 F.3d 1220, 1222 (11th Cir. 2006). That is, we "must affirm the [IJ's and] BIA's decision if [they are] supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quotation and citations omitted). We "may not reweigh the evidence and may not reverse the [IJ's and] BIA's findings of fact unless the record compels a contrary conclusion." *Id.* (citation omitted).

The INA provides "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To establish his eligibility for withholding of removal, the applicant bears the burden of demonstrating that his life or freedom would more likely than not be threatened upon return to his country because of his race, religion, nationality, political opinion, or membership in a particular social group.

7

*See Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003); 8 U.S.C.

§ 1231(b)(3); 8 C.F.R. § 208.16(b).[3]  That is, an alien bears the burden of

demonstrating that he more likely than not would be persecuted or tortured on

account of a statutorily protected ground upon his return to the country in

question.  *Mendoza*, 327 F.3d at 1287.  Neither the INA nor its attendant

regulations define "persecution," but we have noted "persecution is an extreme

concept, requiring more than a few isolated incidents of verbal harassment or

intimidation, and that mere harassment does not amount to persecution."

*Sepulveda*, 401 F.3d at 1231 (internal quotations and citation omitted).

Establishing causation, moreover, "requires the alien to present specific, detailed

facts showing a good reason to fear that he or she [has been or] will be *singled out*

for persecution on account of [a statutorily protected ground]."  *Al Najjar*, 257

F.3d at 1287 (quotations and citation omitted) (emphasis in original).  "If the alien

establishes past persecution in his country based on a protected ground, it is

presumed that his life or freedom would be threatened upon return to his country

---

[3] The burden of proof for withholding of removal is more stringent than the burden for asylum.  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005).  Thus, if an applicant is unable to meet the standard of asylum, he is generally precluded from qualifying for withholding of removal.  *Id.* at 1232-33.  To establish eligibility for asylum, the alien must establish, with specific and credible evidence, (1) past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion; or (2) a well-founded fear of future persecution on account of a statutorily-protected ground.  *See* 8 U.S.C. §§ 1101(a)(42)(A), 1158; *Sepulveda*, 401 F.3d at 1230-31.

unless the INS shows by a preponderance of the evidence that, among other things, (1) the country's conditions have changed such that the applicant's life or freedom would no longer be threatened upon his removal; or (2) that the alien could avoid a future threat to his life or freedom by relocating to another part of the proposed country of removal, and it would be reasonable to expect him to do so." *Mendoza*, 327 F.3d at 1287; 8 C.F.R. §§ 208.13(b), 208.16(b).

The alien's testimony, if credible, may be sufficient to sustain the burden of proof for asylum or withholding of removal without corroboration. *See* 8 C.F.R. §§ 208.13(a), 208.16(b); *see also Matter of Dass*, 20 I&N Dec. 120, 124 (BIA 1989) (testimony alone can suffice for political asylum where it is believable, consistent, and sufficiently detailed to support the claim). "However, the weaker the applicant's testimony, the greater the need for corroborative evidence." *Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005). "An applicant should provide documentary support for material facts which are central to his . . . claim and easily subject to verification, such as . . . documentation of medical treatment." *In re S-M-J*, 21 I&N Dec. 722, 725 (BIA 1998).

Based on the evidence and testimony Robles-Quecano presented, we hold substantial evidence supports the BIA's finding that Robles-Quecano failed to meet his burden of showing eligibility for withholding of removal. The

9

threatening phone calls Robles-Quecano received from the Revolutionary Armed Forces of Colombia (FARC) and the single incident where he was allegedly physically harmed by the FARC in November 2000 do not amount to persecution, but are better characterized as isolated incidents and verbal harassment. *See Sepulveda*, 401 F.3d at 1231.

Similarly, Robles-Quecano's testimony regarding harassing phone calls and the November 2000 incident does not establish that he faced a future threat and that he would more likely than not be persecuted upon his return to Colombia. *See Mendoza*, 327 F.3d at 1287. When he stopped working for the Uribe campaign after the November 2000 incident, Robles-Quecano remained in Colombia unharmed for six months before coming to the United States, even though he testified that the FARC knew where he lived and studied. While he testified that the FARC continued to contact his family and girlfriend, he did not state that the FARC tried to contact him directly. Robles-Quecano further indicated that he has family remaining in Colombia who have gone unharmed by the FARC. While he testified that the FARC continued to call his family after he came to the United States, he also testified that this ceased when his family moved. *Ruiz v. United States*, 440 F.3d 1247, 1259 (11th Cir. 2006) (holding petitioner's claim of well-founded fear, in the context of his claim for asylum, was negated by his

10

testimony that he had family remaining unharmed in Colombia). Based on his testimony, therefore, Robles-Quecano did not show it is more likely than not that he will be persecuted if returned to Colombia.[4]

Additionally, the IJ did not apply the wrong legal standard in determining Robles-Quecano was ineligible for withholding of removal. Because Robles-Quecano did not (and statutorily could not) pursue asylum relief at his hearing, he thereby sought relief only in the form of withholding of removal. The IJ, therefore, correctly used the "more-likely-than-not" standard in determining whether he qualified for such relief. *See Mendoza*, 327 F.3d at 1287. The IJ did not err in noting this standard was higher than the standard for asylum. *See Mazariegos v. U.S. Att'y Gen.*, 241 F.3d 1320, 1324-25 n.2 (11th Cir. 2001).

Substantial evidence thus supports the BIA's finding that Robles-Quecano did not meet his burden of establishing eligibility for withholding of removal. Accordingly, we deny his petition in this respect.

For the foregoing reasons, we dismiss Robles-Quecano's petition in part,

---

[4] We also note the BIA was permitted to consider Robles-Quecano's lack of corroborating evidence in determining he was ineligible for withholding of removal. Though Robles-Quecano correctly asserts that in some circumstances, testimony alone may suffice to show eligibility for withholding of removal, the need for corroborative testimony is greater if the applicant's testimony is weak. *See Yang*, 418 F.3d at 1201. Here, Robles-Quecano's testimony was vague and insufficiently detailed and, therefore, the nature of his testimony amplified the need for corroborative evidence.

and deny the petition in part.

**PETITION DISMISSED IN PART, AND DENIED IN PART.**