[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 20, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14115
Non-Argument Calendar

_____

BIA No. A98-316-539

MARIE ROSE CHARLES,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(March 20, 2008)**

Before MARCUS, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Marie Rose Charles petitions this court for review of the Board of

Immigration Appeals' (the "BIA") order of removal and denial of asylum relief. For the reasons stated below, we deny the petition.

## I. BACKGROUND

Charles, a native and citizen of Haiti, was admitted into the United States in November 2003 as a non-immigrant visitor. On June 4, 2004, the Department of Homeland Security initiated removal proceedings and issued her a Notice to Appear charging that Charles had remained in the United States longer than permitted. Charles conceded removability, but sought asylum, withholding of removal, and protection under the U.N. Convention Against Torture ("CAT"). The asylum claim is based on persecution Charles allegedly experienced on account of her political beliefs while living and working as a school teacher in Haiti.

According to her asylum application statement and her testimony before the Immigration Judge (the "IJ"), Charles joined the Mochrenha political party in January of 2000. Mochrenha opposed then-President Aristide. Charles attended Mochrenha meetings about twice a week for four to five months and worked for Mochrenha as a translator for foreign visitors.

On May 9, 2000, Charles was attacked after leaving a Mochrenha meeting. Some men approached Charles and her friend as they were getting into the friend's car and prevented the car from leaving. The men threw rocks at the two women and broke the back windshield of the car. The men also beat both Charles and her

2

friend. This incident left Charles' face badly beaten and swollen. She now has a medical pin in her arm as a result of being pulled out of the car. Charles identified these men as members of Lavalas, a political group supporting Aristide's government. She did not report this incident to the police out of fear of retaliation, but she testified that other Mochrenha members did report it to the police. Following that attack, she ceased her involvement with Mochrenha for a few years.

In 2003, Charles again began participating in Mochrenha events. In October 2003, Charles attended a Mochrenha demonstration. Lavalas members broke up the demonstration, beat demonstration attendees, and fired bullets into the air. That night, Lavalas supporters came to Charles' house, tied up her husband and beat him, beat her, and touched her and one of her daughters in a sexual manner. Again, Charles did not report this incident to the police out of fear and because of her bad physical condition. The morning after the attack at their house, Charles and her family left Port-au-Prince where they had been living and traveled to Leogane, another area in Haiti where she had family. A month later she left Haiti and came to the United States. She and two of her daughters have been staying with friends here, and her husband and other daughter remain in Haiti.

Charles testified that her husband still feels quite scared. One day after Charles had left for America, her husband arrived at the school where he is the principal to find a group of people near the school who called out that he was "the

3

husband of the lady that belong[ed] to Mochrenha." He ran and hid in a nearby building until 9:00pm that evening. Charles alluded to the fact that her daughter and husband remain afraid and are living in hiding in Haiti, but her testimony is somewhat unclear on this point.

In addition to her testimony, Charles submitted a Mochrenha membership card, and a letter from a Mochrenha member verifying that Charles was a member of that organization. The State Department Country Report for Haiti was also submitted. The report noted that Aristide had been removed from office in February 2004 and replaced by a new government, but that violence—including political violence—continued in Haiti.

After the hearing, the IJ requested evidence corroborating Charles' testimony. The IJ stated that he was giving Charles' attorney "an opportunity to basically submit some additional materials to help illustrate matters relating to [Charles'] claim." Specifically, the IJ requested documentation showing that persons with elevated positions within the Mochrenha—such as Charles testified she held—would have the increased risk that Charles believed them to have, and documents indicating whether her husband and daughter in Haiti continue to experience persecution even though Charles is no longer there. The IJ gave Mochrenha one month to produce supporting documentation, but Charles failed to submit the requested documents or any other corroborating evidence.

4

The IJ denied Charles' petition for asylum. The IJ found that Charles had failed to satisfy her burden of proof by failing to submit the supporting documents that he requested. The IJ found it particularly damaging to her claim that her husband remained in Haiti, even though he holds a U.S. tourist visa, and that he had returned to Haiti after visiting Charles in the U.S. The IJ also noted that the membership card and letter submitted by Charles indicated she joined Mochrenha in 2002 even though she testified that she had joined in 2000. The IJ acknowledged Charles' explanation that the membership card was actually a renewal card and that the letter was mistaken, but continued to be bothered by the discrepancy. The IJ denied Charles' petition for asylum, withholding of removal, and CAT relief, stating "there's a litany of materials that are either inconsistent, or lack foundation, lack evidentiary support, or otherwise point to the elements of credibility that must be established as far as cases such as this are concerned." The IJ, however, made no explicit adverse credibility determination.

The BIA affirmed the IJ's ruling, but issued its own written opinion rather than adopting the IJ's opinion. The BIA noted that the IJ seemed to question Charles's credibility, but failed to make an explicit adverse credibility finding. The BIA stated that it would therefore "assume that any credibility determinations were not dispositive." The BIA agreed with the IJ that Charles failed to meet her burden of proof for asylum due to inadequacies in her testimony and insufficient

5

corroborating evidence. The BIA faulted Charles for failing to provide any documentation corroborating fundamental aspects of her claim of past persecution, despite the IJ giving her one month to do so. The BIA also stated that the material facts underlying the 2000 and 2003 incidents could easily have been verified or a corroborating statement obtained, as Charles had been in contact with people in Haiti, and her husband even came to visit her in the United States. Furthermore, the letter from the Mochrenha member did not state that membership in Mochrenha put Charles at risk in Haiti or verify that she had been attacked leaving a meeting.

The BIA also noted that Charles avoided further confrontation with Lavalas by relocating to another part of the country after the 2003 incident, and that she could presumably do so again. In addition, the State Department report indicated that conditions in Haiti had materially changed since Charles's departure in 2003, as Lavalas was no longer in power. Finally, the BIA reiterated that Charles's family remained in Haiti without harm. The BIA concluded that Charles failed to meet her burden of proof for asylum, and thus, also failed to meet the higher standard for withholding of removal. The BIA also denied relief under CAT as Charles had not presented evidence establishing that it is more likely than not that she will be tortured upon returning to Haiti.

## II. STANDARD OF REVIEW

Here, the BIA issued a written opinion and did not expressly adopt the IJ's

opinion, and we, therefore, review only the BIA's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). This court reviews de novo the BIA's legal determinations. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). Factual determinations are reviewed under the highly deferential substantial evidence test which requires this court to "view the record in the light most favorable to the [BIA's] decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc). This court "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1284 (quotation omitted). Findings of fact will be reversed "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi, 386 F.3d at 1027.

## III. DISCUSSION

To establish asylum eligibility, the petitioner must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. An applicant for asylum who has established past persecution on a protected ground is presumed to have a well-founded fear of future persecution on the basis of the

7

original claim. 8 C.F.R. § 208.13(b)(1). "If [s]he cannot show past persecution, then the petitioner must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006).

*Credibility*

In order for there to be an adverse credibility finding, the IJ must make an explicit and "clean determination" of credibility. Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). Here, as in Yang, the IJ's references to inadequacies in Charles' testimony and proof, were insufficient to constitute an explicit adverse credibility determination, and we, therefore, take Charles' testimony as true. Id. The BIA stated that in the absence of an adverse credibility determination by the IJ that it would "assume that any credibility determinations were not dispositive." This language has been used by this court. See Id. This statement applies where issues of credibility are not dispositive in the BIA's decision such as where the applicant is ineligible for asylum even if his testimony is true. But where credibility is one of the factors at issue in the petitioner's asylum application, and the IJ fails to make an explicit credibility finding, the BIA must take the petitioner's testimony as credible and true. Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1254 n.2 (11th Cir. 2007).

8

*Failure to Support Her Claim of Past Persecution*

As the asylum applicant, Charles carries the burden of proving statutory "refugee" status. 8 C.F.R. § 208.13(a); Al Najjar, 257 F.3d at 1284. "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.13(a); De Santamaria v. U.S. Att'y Gen., 512 F.3d 1308, 1315 (11th Cir. 2008). The question here is whether credible testimony requires corroboration.[1] The IJ and the BIA determined that Charles' testimony required corroborative evidence, and because Charles failed to produce any such evidence even after being given one month to do so, the BIA found that she had failed to carry her burden of proof in establishing past persecution.

We note that in the current REAL ID Act, Congress has stated that evidence must be presented if requested. 8 U.S.C. § 1158(b)(1)(B)(iii) ("Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence."). This section of the REAL ID Act does not apply to Charles' petition, however, because

---

[1] The government argues that we are precluded from reversing the BIA regarding its decision that corroborative evidence was readily available, citing the REAL ID Act § 101(e). This statute states that "[n]o court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." This appeal, however, does not raise the question of whether evidence was availabile, but rather whether the petitioner's credible testimony by itself establishes past persecution. See Niftaliev v. U.S. Att'y Gen., 504 F.3d 1211, 1217 (11th Cir. 2007).

it applies only to asylum applications made on or after May 11, 2005 and Charles filed her application on April 21, 2004. We must, therefore, apply the law as it stood prior to this statutory amendment.

A petitioner with credible, consistent, and detailed testimony may not be denied asylum solely based on their failure to produce corroborative evidence. Niftaliev v. U.S. Att'y Gen., 504 F.3d 1211, 1216-17 (11th Cir. 2007). On the other hand, testimony that is vague, contains only generalities, or is inconsistent does require corroborative evidence under the law of this Circuit. The "weaker the applicant's testimony . . . the greater the need for corroborative evidence." Yang, 418 F.3d at 1201. Weak testimony is testimony that is not "believable, consistent, and sufficiently detailed . . . so as to provide a plausible and coherent account of the basis for [the petitioner's] alleged fear." Matter of Y-B-, 21 I. & N. Dec. 1136, 1137 (BIA 1998). In these situations the corroborating evidence is seen as a "remedy" to the insufficient testimony. Id. at 1139. The BIA has routinely requested corroborative evidence and denied asylum to petitioners with weak testimony who failed to produce readily available evidence when requested to do so. See e.g., Matter of Dass, 20 I. & N. Dec. 120, 124 (BIA 1989); In re M-D-, 21 I. & N. Dec. 1180, 1182 (BIA 1998) ("[W]e have explained that the introduction of [corroborating] evidence is not 'purely an option' with the asylum applicant; rather, corroborating evidence should be presented where available.").

10

If no corroborating evidence is available owing to the alien's circumstances or the conditions in their native country, this requirement is usually waived so long as the petitioner provides a reasonable explanation as to why the evidence is prohibitively difficult to obtain. See Matter of S-M-J-, 21 I.& N. Dec. at 1182-83 (holding that "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided . . . If the applicant does not provide such information, an explanation should be given as to why such information was not presented").

Although in this case, the testimony was not vague or non-specific, the BIA noted other"inadequacies in her testimony," including the fact that the two items of evidence of her membership in Mochrenha stated that she joined the group in 2002 despite her testimony that she had been a member since 2000. Also, Charles testified that her position in Mochrenha made her an ongoing target for political attacks, and yet the State Department Country Report for Haiti did not mention Mochrenha at all. The BIA was also suspicious of her story given her family's continued presence in Haiti, and her husband's willingness to return to Haiti after visiting her in the United States. The IJ determined that corroborative evidence was necessary to verify the attacks, to learn about her family's current safety status in Haiti, and to confirm that involvement in Mochrenha put her at risk. The IJ granted Charles one additional month to procure this evidence, but Charles

11

provided no such evidence and no explanation that the evidence was unavailable. Because Charles was given extra time to submit corroborating evidence and because she failed to explain why she did not do so, we uphold the BIA's determination that she failed to carry her burden of proof that she experienced past persecution.

Having failed to establish past persecution, Charles is not entitled to a rebuttable presumption of a well-founded fear of future persecution and must prove her well-founded fear in order to establish eligibility for asylum. Ruiz, 440 F.3d at1257. Charles has not argued in her briefs to this court that she holds a well-founded fear of future persecution and so has abandoned that argument. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005). Even if she had presented such an argument, the record does not establish Charles' well-founded fear of future persecution if she returns to Haiti. First, the fact that Charles' husband and daughter continue to reside in Haiti undermines her claim that she has an objectively well-founded fear of future persecution should she return to Haiti. Ruiz, 440 F.3d at 1259. Moreover, the BIA found that Charles could relocate to another area of Haiti to avoid future persecution as she did temporarily after the 2003 attack, and the record does not compel us to conclude otherwise. 8 C.F.R. § 208.13(b)(3) (providing that in order to establish a well-founded fear of future persecution, the petitioner must show that she could not avoid persecution by

12

relocating to another part of his country where it is reasonable to expect her to do so). Finally, the Country Report demonstrates that conditions in Haiti have changed, and the Aristide-supporting Lavalas group is no longer in power. Although the Country Report indicates that political violence continues in Haiti, nothing in the record compels us to reverse the BIA's finding that the conditions have changed sufficiently to counteract her claim of fear of future persecution. Thus, substantial evidence supports the BIA's conclusion that Charles did not establish an objectively reasonable possibility that she would suffer persecution if she returns to Haiti.

Charles' claim for asylum is denied because she failed to establish past persecution or a well-founded fear of future persecution. Charles has also, therefore, failed to establish satisfy the more stringent standard for withholding of removal. See Adefemi, 386 F.3d at 1027.

*Convention Against Torture*

Charles contends that the BIA erred by inadequately addressing her claim for relief under CAT. The BIA found that Charles "also failed to establish CAT eligibility as she has not presented evidence establishing that it is more likely than not that she will be tortured upon returning to Haiti." The BIA appropriately dismisses a claim where neither evidence nor argument relating to that claim were presented to the agency. See Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239,

13

1242 (11th Cir. 2004) (noting that the burden of proof for a CAT claim lies with the alien petitioner). We, therefore, uphold the denial of CAT relief.

## IV.  CONCLUSION

For the foregoing reasons, Charles' petitions for asylum, withholding of removal, and relief under CAT are **DENIED**.