FILED
United States Court of Appeals
Tenth Circuit

April 17, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KARYA FNU,

      Petitioner,

v.

MICHAEL B. MUKASEY,
United States Attorney General,

      Respondent.

No. 07-9550
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **LUCERO** and **PORFILIO**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

      Petitioner Karya, FNU,[1] is a citizen and native of Indonesia who has been

ordered removed from the United States. He petitions for review of an order of

---

[*]       After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]       This case is captioned "Karya FNU," the last three letters signifying "Family Name Unknown." Like many Indonesians, Karya uses only one name. Admin. R. at 87-88. *See also* http://en.wikipedia.org/wiki/Indonesian_name (visited April 14, 2008) (explaining Indonesian naming conventions). He also has a Chinese name, Pek Cai Kun.

the Board of Immigration Appeals (BIA) adopting the decision of an immigration judge (IJ) denying his application for asylum, restriction on removal,[2] and relief under the Convention Against Torture (CAT). We deny the petition for review.

## BACKGROUND

Karya is ethnic Chinese, born to Chinese parents in Indonesia in 1973. His father owns a small palm-seed plantation in Indonesia. His wife and their children reside in Indonesia with her parents.

Karya has conceded his removability from this country. He was admitted to the United States on a non-immigrant student visa, arriving on March 18, 2003, but he did not attend school. He overstayed his visa instead and remained in the United States without authorization.

On February 12, 2004, he submitted a timely application for asylum and restriction on removal, contending that he faced persecution if returned to Indonesia because of his race and his political opinions. The IJ held a hearing on

---

[2] Restriction on removal was known as "withholding of removal" before the amendments to the Immigration and Nationality Act (INA) made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 100 Stat. 3009. The regulations under the INA, however, retain the former term "withholding of removal," *see, e.g.*, 8 C.F.R. § 208.16(b), and both Karya and the IJ referred to "withholding of removal." We employ the statutory term "restriction on removal." *See Ismaiel v. Mukasey*, 516 F.3d 1198, 1200 n.2 (10th Cir. 2008).

this application, at which Karya testified. In his testimony, he detailed a series of incidents of alleged persecution based on his Chinese ethnicity.

Karya testified that his father pays protection money to "gangsters" who have threatened his palm-seed business. Karya was the only Chinese child in his public elementary school, and his classmates harassed him for being ethnic Chinese. Some of his teachers also picked on him. He was beaten on one occasion in public school by a native Indonesian classmate. He later dropped out of school for two years but attended a private high school and was not harassed there.

After high school, one of his friends was allegedly beaten to death when the friend confronted a group of gangsters. Gangsters also approached Karya, demanding money, and when he stated he did not have any and asked them why they always asked for money from Chinese people, they beat him until his face bled. Karya later started a business selling rice, for which he had to pay protection money to a gang. That business was destroyed during anti-Chinese rioting in 1998.

An additional incident of alleged persecution occurred in 2002, when gangsters robbed Karya. Also in 2002, his brother died. Although Karya's family was told that the death was caused by a car accident, they were suspicious of this explanation because there was some kind of a mark on the back of the brother's hand that they believed was evidence that he had been beaten to death.

-3-

The IJ did not find Karya's testimony entirely credible. He characterized it as "not sufficiently detailed, consistent, or believable to provide a plausible and coherent account for the basis of his fears and [it] thus cannot suffice to establish his eligibility for asylum without any corroborat[ion]." Admin. R. at 58. The IJ noted the lack of corroborating evidence for Karya's story, such as medical exams, police reports, and accident reports. He also noted that there was no evidence that he had attempted to get his wife and children out of Indonesia. His family still lived there and owned a business and the children were in school. Finally, the IJ concluded that country conditions have improved and that the Indonesian government does attempt to prosecute and incarcerate the sort of "gangsters" who perpetrate assaults like those of which Karya complained.

The IJ determined that Karya had failed to satisfy his burden of proof for either asylum or restriction on removal. The BIA affirmed this determination in a brief order. It adopted and affirmed the IJ's decision and also specifically rejected Karya's argument that the IJ had applied an incorrect legal standard by requiring him to provide corroboration for his allegations of past persecution.

## ANALYSIS

### 1. Applicable Standards

To obtain asylum, Karya must first prove that he is a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A). *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1202 (10th Cir. 2006). He qualifies as a "refugee" if he can demonstrate that he is

unwilling or unable to return to Indonesia because of past persecution or a well-founded fear of future persecution based on one of the statutory grounds of "race, religion, nationality, membership in a particular social group, or political opinion." *Id.* (quoting § 1101(a)(42)(A)). If Karya qualifies as a refugee, he must then persuade the Attorney General to exercise his discretion to grant him asylum relief. *Uanreroro*, 443 F.3d at 1202. To obtain restriction on removal, he must meet a higher standard, by establishing a "'clear probability of persecution'" on account of one of the aforementioned statutory grounds. *Id.* (quoting 8 U.S.C. § 1231(b)(3)).

The BIA adopted and affirmed the IJ's decision in a single-member brief order. *See* 8 C.F.R. § 1003.1(e)(5). In these circumstances, the BIA's decision is the final order under review, but we may consult the IJ's decision when it provides a more complete explanation of the grounds for the decision. *Uanreroro*, 443 F.3d at 1204. We review the BIA's decision to ascertain whether the record on the whole provides substantial support for its denial of relief. *Id.* Its factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## 2. Omissions in Hearing Transcript

Karya first argues that the transcript the agency prepared of the IJ hearing was so fundamentally flawed that the BIA's use of it on review denied him due process. He identifies two basic deficiencies in the transcript. First, it contained

numerous notations that individual words or phrases were "undiscernable." Second, it omitted his entire testimony concerning his brother's death. He contends that these deficiencies prejudiced him to such an extent that we must remand his case for an additional hearing.

The government argues that we should not consider Karya's claims concerning the reliability of the transcript because he failed to exhaust them by presenting them to the BIA. We lack jurisdiction to consider arguments that an alien has failed to raise before the BIA. *Sidabutar v. Gonzales*, 503 F.3d 1116, 1118 (10th Cir. 2007).

The BIA provided Karya with at least two opportunities to present his arguments on appeal. Initially, he was required to state his reasons for appealing within the notice of appeal. *See* Admin. R. at 26. In the notice he did not identify any issues concerning the reliability of the hearing transcript. This is not surprising, since the hearing transcript was not yet available to him.

Karya was, however, also permitted to file an appeal brief. In his notice of appeal, counsel stated that he would be filing a written brief "upon receipt of the transcript" that would describe "[o]ther errors in fact and law made by the [Immigration] Judge in his oral decision." *Id.* The BIA established a briefing schedule, *see id.* at 17, but no brief appears in the administrative record. The government represents that in fact Karya did not file a brief with the BIA. He does not dispute this representation. We conclude that he had the opportunity to

raise issues concerning the unreliability of the hearing transcript in an appellate brief, but failed to do so. This issue is thus unexhausted and we lack jurisdiction to consider it.

### 3. REAL ID Act Argument

Karya contends that the IJ improperly relied on an inapplicable provision of the REAL ID Act of 2005, *see* Pub. L. No. 109-13, div. B, § 101(a), 119 Stat. 231, 303, to require him to provide corroborating evidence for his testimony. In the IJ's oral decision, after noting that Karya's testimony was not sufficiently believable to establish his entitlement to asylum without corroboration, he stated that "the situation regarding asylum has changed. There must if in fact available to him corroboration." [sic] *Id.* at 58.

Karya argues that this rather oblique language refers to the corroboration requirement contained in the REAL ID Act, codified at 8 U.S.C. § 1158(b)(1)(B)(ii).[3] This corroboration requirement only applies to asylum

---

[3] That statute provides:

The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee. In determining whether the applicant has met the applicant's burden, the trier of fact may weigh the credible testimony along with other evidence of record. Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be

(continued...)

applications filed after May 11, 2005. *See Oyekunle v. Gonzales*, 498 F.3d 715, 717-18 (7th Cir. 2007). Karya filed his application over a year before that date. He argues, therefore, that the IJ improperly applied the amendment to require him to provide corroboration for his testimony, and improperly rejected his application because he failed to do so.

Karya presented this REAL ID Act argument to the BIA. The BIA disagreed with his contention that the IJ relied on an incorrect standard. It stated:

> Despite the respondent's claim on appeal, our review of the Immigration Judge's decision and the record does not show that the Immigration Judge applied an incorrect standard in this case. Rather, he correctly applied the law and we affirm his conclusion that the respondent failed to establish past persecution or a well-founded fear of persecution in Indonesia. *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987); *Matter of Dass*, 20 I&N Dec. 120 (BIA 1989); *Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987).

Admin. R. at 2.

*Dass* and *Mogharrabi*, its own prior decisions that the BIA cited in rejecting Karya's argument, both hold that in order meet his burden of proof without further corroboration, an asylum applicant's testimony should be "believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his alleged fear" of persecution. *Dass*, 20 I & N

---

[3](...continued)
provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.

8 U.S.C. § 1158(b)(1)(B)(ii).

Dec. at 124; *Mogharrabi*, 19 I & N Dec. at 445. This is the same language applied by the IJ in this case. *See* Admin. R. at 58. *Dass* further states that "the general rule is that [corroborating] evidence should be presented where available." *Dass*, 20 I & N Dec. at 124.

Both *Dass* and *Mogharrabi* pre-date the enactment of the REAL ID Act by many years. We note also that regulatory authority in effect even before the REAL ID Act permitted an applicant to sustain his burden of proof without corroboration only where his testimony was "credible." 8 C.F.R. § 208.13(a). As we understand the BIA's analysis, then, it concluded that Karya's testimony was not sufficiently credible to sustain his burden of proof by itself, even under the standard in effect prior to the enactment of § 1158(b)(1)(B)(ii) by the REAL ID Act. Karya fails to establish that this conclusion is erroneous.

Karya further argues that the BIA's decision is flawed because "the IJ did not indicate any basis whatsoever for his adverse credibility finding except for his incorrect assertion that Petitioner was required to provide additional corroboration." Pet'r. Br. at 22. An IJ cannot make an adverse credibility determination concerning the alien's testimony (including a determination that the testimony requires further corroboration) unless he provides specific, cogent reasons for that determination. *Uanreroro*, 443 F.3d at 1204-05. Here, the IJ expressed doubt about Karya's claim because he identified his assailants

primarily as "gangsters."[4]  Ultimately, he concluded that Karya's testimony was insufficiently detailed, consistent, or believable to provide a plausible account for his fear of persecution.  Admin. R. at 58.  Karya did not argue to the BIA that this reasoning was deficient.  We therefore lack jurisdiction to consider this aspect of his challenge.  *Sidabutar*, 503 F.3d at 1118.

### 4.  Sufficiency of Persecution Showing

Karya also argues that contrary to the BIA's conclusions, he qualifies as a refugee because he has shown both past persecution and a likelihood of future persecution.  He bears a high burden to obtain relief on this claim.  He must establish that the record compels a conclusion that he has suffered past persecution or is likely to suffer future persecution.  *See* 8 U.S.C. § 1252(b)(4)(B).

Upon consideration, he has failed to meet this burden.  The record supports the IJ's conclusions, adopted by the BIA.  Karya supplied only speculation concerning the reasons for his brother's death.  The record contains no details

---

[4]    The IJ stated:

> [T]he Court's heard Indonesian cases for 11 years and this is the first time I've heard that terminology, gangsters.  Most people from Indonesia that come in have indicated that they [have] been attacked by indigenous people from that particular area, meaning that there are people that were born there that are not [of] Chinese [descent].

Admin. R. at 70-71.

-10-

concerning the alleged loss of his rice business during the 1998 riots. In any event, the IJ noted improvement in the treatment of Chinese people in Indonesia since the riots, and the 2004 State Department Country Report in the record supports this conclusion. Admin. R. at 164. Although he described a few incidents in which he was harassed or mistreated by "gangsters," a reasonable fact-finder would not be compelled to conclude that these rose to the level of past persecution. *See Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir. 2005) ("[T]wo isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution."). His family members continue to reside in Indonesia, apparently without being harmed. We cannot say on this evidence that "any reasonable adjudicator would be compelled to conclude" that Karya suffered past persecution or has a well-founded fear of future persecution if returned to Indonesia. *Sarr v. Gonzales*, 474 F.3d 783, 788 (10th Cir. 2007) (quotation omitted). Having failed to meet the standard for asylum, he also failed to satisfy the higher standard for restriction on removal. *See Solomon v. Gonzales*, 454 F.3d 1160, 1163 (10th Cir. 2006).

### 5. CAT Claim

Karya argues that the IJ and the BIA supplied insufficient reasons for rejecting his CAT claim. But he raised no arguments to the BIA concerning this claim. His notice of appeal mentioned only his asylum and restriction on removal

claims and made no mention of his CAT claim.  *See* Admin. R. at 26.  We therefore lack jurisdiction to consider his CAT arguments.  *Sidabutar*, 503 F.3d at 1118.

## CONCLUSION

The petition for review is DENIED.

Entered for the Court


Wade Brorby
Senior Circuit Judge