**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 15, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

EDWARD PARSAORAN
MAPHILINDO,

       Petitioner,

v.

ERIC H. HOLDER, JR.,[*]
United States Attorney General,

       Respondent.

No. 08-9555
(Petition for Review)

---

**ORDER AND JUDGMENT**[**]

---

Before **LUCERO**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

---

Edward Parsaoran Maphilindo seeks review of a Board of Immigration

Appeals ("BIA") decision affirming the denial of asylum, restriction on removal,

and protection under the Convention Against Torture ("CAT") by an Immigration

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Eric H. Holder, Jr., is substituted for
Michael B. Mukasey as the respondent in this appeal.

[**] After examining the briefs and appellate record, this panel has
determined unanimously to grant the parties' request for a decision on the briefs
without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case
is therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Judge ("IJ"). Maphilindo claims he was denied due process on several bases: (1) the refusal of the IJ to grant a continuance to allow Maphilindo to obtain an attorney, (2) non-disclosure by the government of public State Department reports that were used against him, and (3) the refusal of the IJ to admit evidence he proffered. Because he was afforded ample time to secure counsel, the State Department reports were publicly available, and the evidence he wished to have admitted would have proven only uncontroverted facts, Maphilindo's due process rights were not violated.

He further claims that the IJ improperly discredited his testimony. Yet, the BIA assumed his testimony to be credible, so we need not consider the credibility determination made by the IJ. Finally, he claims that he was entitled to asylum or restriction on removal. We disagree. Exercising jurisdiction under 8 U.S.C. § 1252(a)(2)(D), we deny the petition for review.

## I

Maphilindo is a native and citizen of Indonesia and is a Christian member of the ethnic Batak Tribe. His wife and daughter remain in Indonesia. Maphilindo entered the United States on April 11, 2000, on a work visa authorizing him to stay until September 13, 2002. See 8 U.S.C. § 1101(a)(15)(H)(i)(b). He overstayed his visa and was charged by the Department of Homeland Security with remaining in the United States past the authorized time period. See § 1227(a)(1)(B). Maphilindo conceded the charge,

-2-

and, with the help of an attorney, applied for asylum, restriction on removal, and CAT protection. At his removal hearing, Maphilindo appeared pro se and told the IJ that he had been unable to obtain a new attorney since his attorney had withdrawn from the case nearly a year earlier. Declining to grant a continuance, the IJ cited the ample time following the withdrawal during which Maphilindo could have retained a new lawyer. The IJ then proceeded with the hearing.

Maphilindo testified that he was persecuted in Indonesia on account of his faith and ethnicity. He said that as a child he was hit and attacked by Muslim children and that his father would always yell at him for fighting. Some children told him that Bataks eat dogs, pork, and human flesh, and that "Christianity couldn't save." Maphilindo also recalled that his dog was killed and that people screamed and threw rocks at his house while he prayed. When the police were contacted, they merely advised him to find another place to worship. Eventually, as Maphilindo testified, he attended polytechnic school, majored in electrical engineering, and received corporate sponsorship to work in the United States. Following this testimony, the IJ denied all relief, and ordered Maphilindo removed to Indonesia.

Maphilindo appealed to the BIA, alleging: (1) several due process violations based on the IJ's refusal to grant a continuance for Maphilindo to obtain counsel and on other procedural matters; (2) that the IJ made an unsupported adverse credibility finding; and (3) that the IJ wrongly denied his

applications for asylum, restriction on removal, and CAT protection. The BIA rejected these claims, concluding that Maphilindo had adequate time to seek a new attorney but failed to do so, and that even crediting his testimony, he failed to satisfy the standards justifying relief.

Maphilindo now petitions this court for review, raising the same three claims, although he has abandoned his challenge to the denial of CAT protection, one portion of his third claim.

**II**

At the outset, we must determine whether we have jurisdiction to consider Maphilindo's petition. Sabido Valdivia v. Gonzales, 423 F.3d 1144, 1147 (10th Cir. 2005) ("We must first address a threshold jurisdictional question before turning to the merits."); see also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). According to the government, under Yerkovich v. Ashcroft, 381 F.3d 990, 995 (10th Cir. 2004) and 8 U.S.C. § 1252(a)(2)(B)(ii), a discretionary denial of a continuance by an IJ is beyond the scope of judicial review. But when such a denial gives rise to a colorable constitutional claim, as in this case, we have jurisdiction. § 1252(a)(2)(D); Schroeck v. Gonzales, 429 F.3d 947, 951 (10th Cir. 2005).

Yerkovich, unlike this case, did not involve an alleged constitutional violation stemming from the denial of a continuance. Rather, Yerkovich presented a direct challenge to "the IJ's denial of an indefinite continuance, which

petitioner ha[d] at least implicitly conceded was a matter of discretion" without raising a constitutional claim. Yerkovich, 381 F.3d at 993. By contrast, Maphilindo claims that the denial of the continuance resulted in a fundamentally unfair hearing and thus violated his Fifth Amendment right to Due Process because he was forced to proceed without the assistance of an attorney. See Osei v. INS, 305 F.3d 1205, 1208 (10th Cir. 2002) (recognizing that aliens enjoy a Fifth Amendment right to a fundamentally fair removal proceeding). Thus, we are not asked to determine whether the IJ abused his discretion in denying the continuance, as in Yerkovich, but rather to discern whether the denial of the continuance violated Maphilindo's due process rights. Because he presents a colorable constitutional claim, we have jurisdiction to review that claim. § 1252(a)(2)(D); Schroeck, 429 F.3d at 951; see also Torres de la Cruz v. Maurer, 483 F.3d 1013, 1019 (10th Cir. 2007) (holding that we have jurisdiction to consider constitutional and legal challenges to removal).

### III

When, as in Maphilindo's case, a single member of the BIA issues a final removal order, see 8 C.F.R. § 1003.1(e)(5), "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance," Uanreroro v. Gonzales, 443 F.3d 1197, 1204 (10th Cir. 2006). We review the agency's legal conclusions de novo and its factual findings for substantial evidence. Diallo v. Gonzales, 447 F.3d 1274, 1279 (10th Cir. 2006). To establish

-5-

a due process violation based on an alleged defect in a removal hearing, an alien must show that the lack of representation caused prejudice that "implicates the fundamental fairness of the proceeding." Michelson v. INS, 897 F.2d 465, 468 (10th Cir. 1990); accord Schroeck, 429 F.3d at 952 (applying fundamental fairness standard outside context of lack of counsel claim).

## A

In considering the due process claim based on Maphilindo's lack of counsel, we begin with the proposition that a Sixth Amendment right to counsel in removal proceedings does not exist. United States v. Rangel de Aguilar, 308 F.3d 1134, 1138 (10th Cir. 2002). Thus, Maphilindo cannot succeed on this claim unless he meets the fundamental fairness test articulated above. Maphilindo had almost a year in which to secure counsel; that he chose not to take advantage of this opportunity does not call into question the fundamental fairness of his proceeding. Thus, he cannot make out a due process claim based on the lack of counsel.[1]

Further, Maphilindo alleges a due process violation in that the State Department country reports on Indonesia that were used against him in his hearing were not disclosed to him prior to the hearing. There are several defects

_____

[1] Maphilindo also alleges error in the failure of the IJ to fully and fairly develop the record. He does not explain in what respect the record should have been better developed, seemingly treating this allegation as subsumed by his due process allegation based on the lack of counsel. Thus, we do not separately discuss whether the record was fully developed.

in this argument. First, there is not a due process right to discovery outside the criminal context. Weatherford v. Bursey, 429 U.S. 545, 559 (1977). Second, these are public documents that were freely available to him well in advance of his hearing. Under these circumstances, that the government did not disclose these State Department reports prior to the hearing does not call into question the fundamental fairness of his hearing and thus does not constitute a due process violation.

Similarly, Maphilindo alleges that the exclusion of certain corroborating evidence violated his due process rights by preventing him from presenting evidence on his own behalf. But the evidence he sought to admit—untranslated birth, marriage, and baptismal certificates—concerned matters that were never in dispute. Neither the IJ nor the BIA questioned whether Maphilindo was actually married, Christian, or Indonesian. Therefore, there cannot be any prejudice from this exclusion, and Maphilindo's due process rights were not violated.

**B**

Maphilindo claims the IJ improperly discredited his testimony. However, the BIA expressly assumed his testimony was credible. Because we review the BIA decision as the final order of removal, Uanreroro, 443 F.3d at 1204, and the BIA credited his testimony, we need not evaluate the explanation of the IJ.[2]

---

[2] Our current posture is unlike that in the case cited by Maphilindo, Sviridov v. Ashcroft, 358 F.3d 722 (10th Cir. 2004), because the BIA in that case
(continued...)

**IV**

We turn then to Maphilindo's claim that he satisfied the standards for asylum and restriction on removal. Our review of these claims is highly deferential. We can grant the petition for review challenging these factual conclusions of the BIA only if the record demonstrates that "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); accord Sarr v. Gonzales, 474 F.3d 783, 788-89 (10th Cir. 2007).

"To qualify for asylum, an alien must show that he has suffered past persecution or has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Sarr, 474 F.3d at 788 (quotation and alteration omitted). An alien can qualify for restriction on removal if he demonstrates that his "life or freedom would be threatened in the proposed country of removal because of his race, religion, nationality, membership in a particular social group, or political opinion." Id. (quotation and alteration omitted).

Considering the testimony Maphilindo presented before the IJ, we do not discern sufficient evidence to overcome our deferential standard of review. That is, we cannot say that any reasonable adjudicator would have been compelled to conclude that Maphilindo was entitled to either asylum or restriction on removal.

---

[2](...continued)
affirmed the IJ decision without opinion. Id. at 727.

-8-

> [A] finding of persecution requires the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty. Such persecution may be inflicted by the government itself, or by a non-governmental group that the government is unwilling or unable to control.

Hayrapetyan v. Mukasey, 534 F.3d 1330, 1337 (10th Cir. 2008) (quotation omitted).

Neither the altercations Maphilindo experienced as a child, nor the disruptions he experienced while he prayed, were severe enough to constitute past persecution under our deferential standard of review. Cf. Kapcia v. INS, 944 F.2d 702, 704-05, 707-08 (10th Cir. 1991) (holding that there was substantial evidence to support a finding of no persecution when an alien was detained, beaten, and interrogated, his parents' home was searched, and he was mistreated at work prior to being conscripted into the military and harassed). Further, Maphilindo's testimony that he did not know why his dog was killed provided no support for his claim of racial or religious animus. Moreover, the taunts concerning his faith and ethnicity, while deeply insulting, are better characterized as harassment or discrimination than persecution. See Vatulev v. Ashcroft, 354 F.3d 1207, 1210 (10th Cir. 2003). Maphilindo suggests that the cumulative effect of these experiences might satisfy the asylum standard for past persecution. We disagree.

We also conclude that Maphilindo has not shown a well-founded fear of either individual persecution or persecution based on his "membership in a group subject to a pattern or practice of persecution," Woldemeskel v. INS, 257 F.3d

1185, 1190 (10th Cir. 2001) (quotation omitted), sufficient to survive our standard of review. Maphilindo claims he will be personally targeted due to his immutable characteristics as an ethnic Batak, but this argument was not presented to the BIA and we therefore decline to consider it. See Sidabutar v. Gonzales, 503 F.3d 1116, 1118 (10th Cir. 2007) ("[W]e generally assert jurisdiction only over those arguments that a petitioner properly presents to the BIA."). Although he points to his family as proof that Christians in Indonesia are persecuted as a whole, it seems that his wife and daughter have safely practiced their faith in that country since his departure, and there lacks an indication that they have faced appreciable danger. Likewise, his four siblings continue to live in Indonesia without any particular threat of harm, and they too are Christians.

Nonetheless, Maphilindo insists that the situation in Indonesia has deteriorated. To substantiate his claim, he refers us to a letter from his uncle describing an attack on a church. He also asserts that there is a general atmosphere of violence towards Christians in Indonesia. But this evidence does not establish a pattern or practice of persecution against Christians. A pattern or practice of persecution entails "something on the order of organized or systematic or pervasive persecution." Woldemeskel, 257 F.3d at 1191 (quotation omitted). The isolated incident described in the letter does not, standing alone, support a finding of systematic or pervasive persecution. Nor is "generalized lawlessness and violence between diverse populations" generally sufficient to satisfy the standard. Singh v. INS, 134 F.3d 962, 967 (9th Cir. 1998). Admittedly, the

record reflects a history of strife between Christians and Muslims in Indonesia, but it also indicates that relations between the two groups have improved in recent years.  Accordingly, Maphilindo fails to show that any reasonable adjudicator would be compelled to conclude that he suffered either past persecution or a well-founded fear of future persecution.[3]

Maphilindo's inability to satisfy the asylum standard demonstrates that he necessarily fails to satisfy the more onerous standard for restriction on removal. Solomon v. Gonzales, 454 F.3d 1160, 1164 (10th Cir. 2006).

V

For the foregoing reasons, the petition for review is **DENIED**.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge

---

[3] Because Maphilindo has not shown sufficient evidence of persecution, we need not consider the government's role.  See Batalova v. Ashcroft, 355 F.3d 1246, 1253 (10th Cir. 2004).