**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 13, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SIGIT DJOKO SOEWARSONO,

Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

Respondent.

No. 09-9509
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

---

An immigration judge (IJ) ordered Petitioner Sigit Djoko Soewarsono

removed to Indonesia following the denial of his application for asylum,

restriction on removal,[1] and relief under the United Nations Convention Against

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]     Although the parties refer to "withholding of removal," we use the current terminology. *Razkane v. Holder*, 562 F.3d 1283, 1285 n.1 (10th Cir. 2009).

Torture (CAT).  After the Board of Immigration Appeals (BIA) dismissed Mr. Soewarsono's appeal from the IJ's decision, he petitioned this court for review of the BIA's decision.  We deny the petition for review.

The IJ found Mr. Soewarsono credible and the BIA did not question that finding, holding only that his factual allegations did not justify the relief sought. We therefore accept "at face value" his version of the operative facts, *Witjaksono v. Holder*, 573 F.3d 968, 977 & n.9 (10th Cir. 2009), set out in his testimony before the IJ.  *See generally* Transcript of April 23, 2007 Hearing (Tr.) at 34-60. Mr. Soewarsono is a citizen of Indonesia.  He was raised by Muslim parents but became a Christian in 1986 at age twenty-one.  He came to the United States in 2002 to escape tensions between the Muslim majority and Christian minority in Indonesia.  He has two Christian children who still live in Indonesia with his ex-wife's family.

Mr. Soewarsono described three personal incidents that he claims reflect past religious persecution by Muslim extremists whom the government will not or cannot control.  *See Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1337 (10th Cir. 2008) ("[P]ersecution may be inflicted by . . . a non-governmental group that the government is unwilling or unable to control."  (quotation omitted)).  In 1996, he and some twenty fellow Christians were holding a fellowship/prayer meeting at his parents' home in Kediri, when three Muslim neighbors threw stones at the house and chanted for them to stop singing Christian gospel.  Following this

incident, the group's pastor insisted that such meetings be held at the church rather than at members' homes, and no other violence directed at prayer meetings was alleged. Two years later, Muslim neighbors told him to leave the country or he and his family "would be finished." Tr. at 53. He stayed three more months in Kediri to save money and then moved to Sidoardjo, which he later learned also had a significant Muslim-extremist presence. But the only incident he reported as to the four years he lived there involved a scratch to his car that he attributed to anti-Christian sentiment.

Within a year of his arrival in the Untied States, Mr. Soewarsono applied for asylum, restriction on removal, and relief under the CAT. In addition to the past incidents outlined above involving him personally, he claimed more broadly that conflict between Muslims and Christians in Indonesia had escalated to the point that he feared persecution should he return to the country. After a number of delays, his case came on for hearing. At the conclusion of the hearing, the IJ found that the incidents outlined above did not constitute past persecution (or torture under the CAT) and that Mr. Soewarsono had not shown a reasonable fear or likelihood of future persecution based on broader country conditions. The BIA agreed with the IJ and dismissed Mr. Soewarsono's appeal in a short decision issued by a single member. This petition for review timely followed.

**Denial of Asylum and Restriction on Removal**[2]

The BIA's single-member decision dismissing Mr. Soewarsono's agency appeal "constitutes a final order of removal which we review pursuant to 8 U.S.C. § 1252(a)(1) and (b)(2)." *Witjaksonso*, 573 F.3d at 973. We consider "the BIA's legal determinations de novo, and findings of fact under a substantial-evidence standard." *Razkane v. Holder*, 562 F.3d 1283, 1287 (10th Cir. 2009). While the immediate object of our review is the BIA's order, we may consult those parts of the IJ's oral decision that the BIA relied on or incorporated. *Id.*; *Witjaksono*, 573 F.3d at 973. Our analysis begins and ends with the asylum claim, since "[h]aving failed to establish that he is entitled to discretionary consideration for asylum, Mr. [Soewarsono] has perforce failed to establish that he is entitled to mandatory [restriction on removal], which, we have acknowledged, requires a petitioner to meet a higher standard than that for asylum." *Ustyan v. Ashcroft*, 367 F.3d 1215, 1218 (10th Cir. 2004) (quotation omitted); *see Chaib v. Ashcroft*, 397 F.3d 1273, 1277 (10th Cir. 2005) ("Asylum requires proof of a well-founded fear of persecution whereas restriction requires proof that persecution is more likely than not." (quotation omitted)).

---

[2]     Mr. Soewarsono has effectively abandoned his claim for relief under the CAT. While he makes a passing, isolated reference to the CAT in the last paragraph of his brief, it is not included in the issues designated and argued. In any event, we would uphold the BIA's denial of relief under the CAT for much the same reasons expressed above for upholding its denial of asylum and restriction on removal.

An alien may establish the refugee status required for consideration of asylum in three ways:

> (1) by showing a well-founded fear of future persecution; (2) by showing past persecution sufficient to give rise to a presumption that [he] has a well-founded fear of future persecution; or (3) by showing past persecution so severe that it supports an unwillingness to return to the country where the persecution occurred. In cases in which an applicant has demonstrated past persecution, [he] shall also be presumed to have a well-founded fear of persecution on the basis of the original claim, unless the government can prove by a preponderance of the evidence that either there has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality or that the applicant could avoid future persecution by relocating to another part of the applicant's country of nationality[.]

*Hayrapetyan*, 534 F.3d at 1335-36 (quotations, citations, and alterations omitted). The critical determinations here, whether Mr. Soewarsono demonstrated past persecution and/or established a well-founded fear of future persecution, are matters of fact governed by the substantial-evidence standard. *See Witjaksono*, 573 F.3d at 977; *Vicente-Elias v. Mukasey*, 532 F.3d 1086, 1091 (10th Cir. 2008). Thus, we must uphold the BIA's decision "'unless any reasonable adjudicator would be compelled to conclude to the contrary, . . . even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution.'" *Witjakasono*, 573 F.3d at 977 (quoting *Vicente-Elias*, 532 F.3d at 1091).

The BIA found that the instances of harassment related by Mr. Soewarsono did not amount to persecution. This finding is fully in line with the precedent of this circuit. "Persecution is the infliction of suffering or harm in a way regarded as offensive and involving more than just restrictions or threats to life and liberty." *Ba v. Mukasey*, 539 F.3d 1265, 1270 (10th Cir. 2008) (quotation and alterations omitted). This must be distinguished from discrimination, which, "as morally reprehensible as it may be, does not ordinarily amount to persecution." *Id.* (quotation omitted). Thus, we have recognized that taunts and harassment comparable to, indeed in some instances considerably worse than, events here do not constitute persecution. *See, e.g.*, *Wijaksono*, 573 F.3d at 972, 977; *Sidabutar v. Ashcroft*, 503 F.3d 1116, 1124 (10th Cir. 2007); *Vatulev v. Ashcroft*, 354 F.3d 1207, 1210 (10th Cir. 2003). While the threat to Mr. Soewarsono in 1998 was potentially serious, "[t]hreats alone generally do not constitute actual persecution; only rarely, when they are so immediate and menacing as to cause significant suffering or harm in themselves, do threats per se qualify as persecution." *Vatulev*, 354 F.3d at 1210. And his continued stay in Kediri, without further incident, for three months after the threat undercuts the claim that the threat in itself rose to the level of persecution. In sum, we cannot say that the record compels a finding contrary to the BIA's determination that Mr. Soewarono did not establish past persecution.

-6-

The same is true for the BIA's determination that Mr. Soewarsono has not demonstrated a well-founded fear of future persecution. The BIA concluded that the State Department reports in the record undermined rather than supported his claim that conditions for Christians had worsened since he left Indonesia in 2002. Absent some compelling inconsistency between the factual content of the reports and the BIA's assessment thereof, which Mr. Soewarsono has not even remotely demonstrated, we are not in a position to reweigh this evidence. *See Sidabutar*, 503 F.3d at 1125 (upholding rejection of future-persecution claim of Indonesian Christian based on BIA's reliance on 2004 country reports). The BIA further noted that Christian members of Mr. Soewarsono's family live in Indonesia—a circumstance we have repeatedly recognized as undermining a fear of persecution when, as here, there is no evidence indicating that the family members have faced any persecution. *See, e.g.*, *Maphilindo v. Holder*, 323 F. App'x 659, 665 (10th Cir. 2009); *Butarbutar v. Mukasey*, 295 F. App'x 295, 297 (10th Cir. 2008); *Fnu v. Mukasey*, 274 F. App'x 662, 667 (10th Cir. 2008). We conclude that the BIA's determination is supported by substantial evidence.

In the absence of a compelling demonstration of either past persecution or a well-founded fear of future persecution, we affirm the BIA's denial of asylum and restriction on removal. There is, however, one more issue of a procedural nature raised by Mr. Soewarsono that we must address before finally disposing of the petition for review.

**Failure to Admit into Evidence Documents Attached to Application**

At the evidentiary hearing, the IJ made it clear that he would "not accept[] matters that are not bate stamped unless they are referred to and we discuss them in court," so the government "can make an objection at that time if they're not properly translated . . . [o]r not properly certified." Transcript of April 23, 2007 Hearing at 33. Thereafter, the IJ twice asked Mr. Soewarsono's counsel whether he wished to add any material to the record, and counsel unequivocally declined. *Id.* at 60, 62. Accordingly, when summarizing the evidence of record in the course of his oral decision, the IJ explained that attachments to Mr. Soewarsono's application would not be considered

> due to the fact that those attachments were not appropriately marked and identified into the record or into the evidence, and as suggested by the [government], the evidence in many instances do[es] not contain the appropriate certificates of translation.
>
> Accordingly, the Court proffered to [Mr. Seowarsono's] counsel that in the event he intended to introduce any of the evidence which was attached to the asylum application, that [he] so identif[y] that document in the record. . . . Since none of this took place and was not done at the hearing, the Court therefore considers only that part of the application which has been identified in the record.

Oral Decision of IJ, April 23, 2007 at 7. Mr. Soewarsono claims that this violated his right to due process. Pet. Opening Br. at 18-19.

We have held in several contexts that judicial intervention in immigration proceedings on due-process grounds is unwarranted absent a showing of prejudice. *See Witjaksono*, 573 F.3d at 974-75 (rejecting objection regarding

-8-

inadequate transcript of IJ hearing); *Michelson v. INS*, 897 F.2d 465, 468 (10th Cir. 1990) (rejecting objection regarding lack of appointed counsel in removal proceeding); *Gonzales-Garcia v. INS*, No. 95-9508, 1995 WL 684250, at **3 (10th Cir. Nov. 17, 1995) (unpub.) (rejecting objection regarding IJ's admission of unfavorable information about alien). Thus, without implying any impropriety in the IJ's exclusion of the attachments to Mr Soewarsono's application, the simplest answer to Mr. Soewarsono's objection is that he has utterly failed to demonstrate prejudice. He makes no effort whatsoever to describe the relevant contents of the attachments, much less to explain how they would have materially bolstered his claims and potentially altered the outcome of the proceedings. *See Witjaksono* 573 F.3d at 975 (noting materiality and outcome-alteration as "foundational principles" guiding prejudice analysis in this context). And there is no prejudice readily discernible on the face of the materials. Other than basic background and identification documents confirming facts that are not in dispute, the attachments are the same sort of general news articles he presented without any success to the BIA, which dismissed them as "not material because, although they report tensions between Muslims and Christians, they are general stories that do not address [Mr. Soewarsono] and his situation." BIA Decision dated Dec. 15, 2008, at 1. Mr. Soewarsono has not made out a viable due-process objection here.

The Petition for Review is DENIED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge