**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 3, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MIGUEL FERNANDO
NEYRA-MARTINEZ,

      Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

      Respondent.

No. 10-9528
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and **GORSUCH**, Circuit Judge.

---

Miguel Fernando Neyra-Martinez is a native of Peru who overstayed his visitor visa. After the Department of Homeland Security began removal proceedings, Mr. Neyra-Martinez conceded he was removable but sought asylum and to have his removal "withheld"; as well, he sought protection under the

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Convention Against Torture ("CAT"). The Immigration Judge denied these requests and the Board of Immigration Appeals affirmed the IJ's decision. Mr. Neyra-Martinez now asks us to undo this result, but as we will explain this we cannot do.

We begin with Mr. Neyra-Martinez's asylum and withholding of removal requests. To prevail in his asylum claim, Mr. Neyra-Martinez had to show that he could not return to Peru "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42).[1] To prevail on his withholding of removal claim, Mr. Neyra-Martinez's burden was similar: he had to show "that his life or freedom would be threatened in the proposed country of removal because of his race, religion, nationality, membership in a particular social group, or political opinion." *Dallakoti v. Holder*, 619 F.3d 1267-68 (10th Cir. 2010) (quotation and citation omitted); *see also* 8 U.S.C. § 1231(b)(3).

Mr. Neyra-Martinez challenges the BIA's denial of his asylum and withholding of removal requests primarily, though not exclusively, on the ground that the Board's decision rests on factual errors. We may review the BIA's

---

[1] The REAL ID Act of 2005 amended the Immigration and Nationality Act to require that an applicant show that "race, religion, nationality, membership in a particular social group, or political opinion *was or will be at least one central reason* for persecuting the applicant." *Dallakoti v. Holder*, 619 F.3d 1264, 1268 (10th Cir. 2010) (emphasis added); 8 U.S.C. § 1158(b)(1)(B)(i). Because Mr. Neyra-Martinez filed his application in 2003, the provisions of the REAL ID Act do not apply to his case.

findings of fact, however, only for the presence of "substantial evidence." Under this standard, the BIA's "factual findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009) (quotation omitted).

Seeking to shoulder the burden of showing that the BIA's factual findings fall short, Mr. Neyra-Martinez argues that the facts before the BIA showed members of the Shining Path guerilla movement persecuted him (and are likely to persecute him again, should he return to Peru) because of his *political* beliefs. But the BIA found otherwise and enough evidence exists in the record that we cannot say any reasonable adjudicator would have had to find differently. The evidence shows that Mr. Neyra-Martinez worked as a security officer for a mining company in Peru and that this job provided him with access to various chemicals. At some point, several members of the Shining Path sought his help in obtaining certain chemicals for explosives. When he refused and reported the incident to the government, among others, Mr. Neyra-Martinez was threatened by the Shining Path group. So a threat did exist, at least at one time. But the BIA reasonably found that any threat existed *not* because of any political beliefs Mr. Neyra-Martinez harbored, but because he was doing his job as a security officer for the mining company and seeking to avoid enmeshing himself in an illegal venture.

Mr. Neyra-Martinez replies that the BIA erred as a matter of law by failing to take appropriate cognizance of the fact that the Shining Path is known to have

engaged in guerilla warfare aimed at toppling the Peruvian government. With this, however, we cannot agree. The Supreme Court has told us that "the mere existence of a generalized 'political' motive underlying the guerrillas' forced recruitment is inadequate to establish . . . the proposition that [the petitioner] fears persecution on account of political opinion"; instead, to trigger protection under the asylum and withholding laws Congress has devised, the petitioner's persecution must be "*on account of [his] political opinion, not the persecutor's.*" *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 482 (1992) (emphasis added). To explain its point, the High Court has noted that "[e]ven a person who supports a guerrilla movement might resist recruitment for a variety of reasons — fear of combat, a desire to remain with one's family and friends, a desire to earn a better living in civilian life, to mention only a few." *Id.* at 482. Yet, under current law, a person who resists recruitment for these reasons and who is threatened for that resistance has no claim for asylum or to have his removal withheld. *Id.* To win relief under the laws prescribed by Congress, then, a petitioner must present evidence that he was or will be harassed *not* simply because he refused to support a guerilla movement, but because of his own particular *statutorily protected status or beliefs.* Here, Mr. Neyra-Martinez sought to establish that he was or will be subject to recriminations based on his statutorily protected *political* beliefs, but the BIA reasonably determined that the record did not bear out this factual assertion.

Even if all this is so, Mr. Neyra-Martinez says he was and will be persecuted because he was a "whistle-blower" and because of his religious faith — and that these are protected statuses or beliefs under the asylum and withholding laws. The BIA disagreed and again substantial evidence supports its findings.

First, the record is devoid of evidence that Mr. Neyra-Martinez was a whistle-blower. To be sure, as Mr. Neyra-Martinez argues, "official retaliation against one who threatens to expose *governmental* corruption may, in certain circumstances, amount to political persecution" warranting relief. *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1337 (10th Cir. 2008) (emphasis added). But in this case, as the BIA found, Mr. Neyra-Martinez did not seek to expose governmental corruption. Instead, he informed the Peruvian government of the Shining Path's request for chemicals and actually sought (and received) the government's protection when doing so.

Second and similarly, although Mr. Neyra-Martinez received one threatening letter that contained two religious slurs, the BIA found that this was insufficient to rise to the level of religious persecution or a threat of future religious persecution, and this court's precedents compel this panel to sustain the Board's conclusion. *See Vatulev v. Ashcroft*, 354 F.3d 1207, 1210 (10th Cir. 2003) (holding that the ethnic slurs fell "far short" of establishing "persecution"); *Maphilindo v. Holder*, 323 F. App'x 659, 664 (10th Cir. 2009) (unpublished)

-5-

(holding that "taunts concerning [alien's] faith and ethnicity, while deeply insulting, are better characterized as harassment or discrimination than persecution"); *Yuk v. Ashcroft*, 355 F.3d 1222, 1234 (10th Cir. 2004) (stating that threats alone may constitute persecution only "when they are so immediate and menacing as to cause significant suffering or harm in themselves").

From his asylum and withholding of removal claims, we turn finally to Mr. Neyra-Martinez's CAT claim. "To receive the protections of the CAT, an alien must demonstrate that it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1125 (10th Cir. 2007) (quotation omitted). In this case, Mr. Neyra-Martinez presented the BIA with no evidence that the Peruvian government would torture him. Neither is there evidence the Shining Path operates with the acquiescence of the government. *See Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005) (noting that acquiescence may be established by showing a government's "willful blindness" (alteration omitted)). To the contrary, Mr. Neyra-Martinez concedes that the police actively sought to protect him from the Shining Path. Given all this, we cannot say that the BIA erred in denying Mr. Neyra-Martinez's CAT claim.

Still, one more issue remains. In his brief to this court, Mr. Neyra-Martinez seeks to argue that his due process rights were violated because the IJ was biased against him. The government replies that we may not consider this

argument because Mr. Neyra-Martinez never presented it to the BIA, and thus failed to exhaust his available administrative remedies. We are compelled to agree. In order to secure judicial review of an argument in this court, an immigration petitioner generally must first present it to the Board for its consideration and disposition. *See* 8 U.S.C. § 1252(d)(1); *Garcia-Carbajal v. Holder*, No. 09-9558, 2010 WL 4367060, at *5 (10th Cir. Nov. 5, 2010). This Mr. Neyra-Martinez did not do.

The petition for review is denied.

Entered for the Court


Neil M. Gorsuch
Circuit Judge