FILED
United States Court of Appeals
Tenth Circuit

March 18, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NORMAN ADONAY CISNEROS-
DIAZ,

        Petitioner,

v.

ERIC H. HOLDER, JR., Attorney
General of the United States,

        Respondent.

No. 10-9533
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **BRORBY**, and **TYMKOVICH**, Circuit Judges.

---

An immigration judge (IJ) found Norman Adonay Cisneros-Diaz removable and denied his application for asylum. The Board of Immigration Appeals (BIA) dismissed his appeal of the IJ's decision and he petitions for review. We have jurisdiction under 8 U.S.C. § 1252(a) and deny the petition.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND

Mr. Cisneros-Diaz was born in Zacatecoluca, El Salvador.  In 2003 his mother came to the United States, and on April 11, 2006, he arrived in the United States with his two brothers by walking across the border.  He testified as follows before the IJ:  He left El Salvador because he was afraid of the Mara Salvatrucha gang.  About a week and a half before he left, four members of the gang had threatened that if he did not join them, they could kill him.  He refused to join and walked away.  The gang members did not take any action against him afterwards because he soon left for the United States.  Also, two days before he left El Salvador, the gang killed his best friend, whom they had confused with a member of another gang.  Mr. Cisneros-Diaz did not ask for help from the police after either incident, because he thought "the police [in El Salvador are] very corrupt" and would not have helped him, and because he feared that the gang would try to kill him if he went to the police.  Cert. Admin. R. at 117.

Mr. Cisneros-Diaz was charged with being subject to removal as an alien present in the United States without being admitted or paroled.  At a proceeding before the IJ on February 6, 2007, he admitted removability but requested relief in the form of asylum.  After hearing evidence on June 26, 2008, the IJ denied his application for asylum and ordered him removed to El Salvador.  The BIA dismissed his appeal.

## II.  DISCUSSION

A single member of the BIA issued a nonsummary decision dismissing Mr. Cisneros-Diaz's appeal.  We review the decision based on the grounds articulated by the BIA decision and grounds raised in the IJ decision that were relied upon by the BIA.  *See Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007).  We review purely legal questions de novo, *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1335 (10th Cir. 2008), but "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).  Whether an alien has demonstrated persecution is a question of fact.  *See Hayrapetyan*, 534 F.3d at 1335.

To be eligible for a discretionary grant of asylum, Mr. Cisneros-Diaz must first establish that he is a refugee.  *See* 8 U.S.C. § 1158(b)(1).  The Immigration and Nationality Act (INA) defines *refugee* as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A).  Mr. Cisneros-Diaz does not contend that he has been persecuted in the past, but asserts that he has a "well-founded fear" that he will be persecuted if he returns to El Salvador because of his membership in a particular social group.  His brief in this court states that the BIA accurately described "the

particular social group to which [he] claims membership [as] 'young men who have resisted criminal gang recruitment [in El Salvador].'" Aplt. Br. at 13 n.6 (parenthesis omitted).

"[A] finding of persecution requires the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty. Such persecution may be inflicted by the government itself, or by a non-governmental group that the government is unwilling or unable to control." *Wiransane v. Ashcroft*, 366 F.3d 889, 893 (10th Cir. 2004) (citation and internal quotation marks omitted). If the persecution is by a nongovernmental group, the alien has the burden of establishing that the government is unwilling or unable to control the group. *See Bartesaghi-Lay v. INS*, 9 F.3d 819, 822 (10th Cir. 1993); 8 C.F.R. § 1208.13(a) ("The burden of proof is on the applicant for asylum to establish that he or she is a refugee[.]").

> To be a well-founded fear of future persecution, the fear
>
> must be both subjectively genuine and objectively reasonable. An asylum applicant has an objectively well-founded fear of persecution if (1) she may be singled out for persecution upon returning to her country of origin, or (2) there is a pattern or practice in that country of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion, and the applicant belongs to and identifies with that group.

*Tulengkey v. Gonzales*, 425 F.3d 1277, 1281 (10th Cir. 2005) (citation, brackets, ellipses, and internal quotation marks omitted). For asylum purposes, "it need not be shown that the situation will probably result in persecution, but it is enough that persecution is a reasonable possibility." *Hayrapetyan*, 534 F.3d at 1335 (internal quotation marks omitted).

Mr. Cisneros-Diaz argues both that he may be singled out for persecution upon his return and that there is a pattern of persecution of people in his claimed social group. The BIA affirmed the IJ's denial of relief on two grounds. First, the BIA said that Mr. Cisneros-Diaz had "failed to establish that young men who have resisted criminal gang recruitment qualifies as a cognizable social group" within the meaning of the INA. Cert. Admin. R. at 4. Second, the BIA endorsed the IJ's finding that Mr. Cisneros-Diaz's "testimony did not show that the government is unwilling or unable to control gang violence." *Id.* at 58. The IJ observed that Mr. Cisneros-Diaz did not attempt to enlist the help of the police in protecting himself and so lacked firsthand knowledge of what protection the police could offer; and the IJ stated that the record showed that the El Salvadoran government "is making a reasonable attempt" to protect its citizens. *Id.* at 59.

We affirm on the second ground. We cannot say that on this record "any reasonable adjudicator would be compelled to conclude . . . contrary" to the findings of the IJ affirmed by the BIA. 8 U.S.C. § 1252(b)(4)(B). We need not

address the first ground because Mr. Cisneros-Diaz would have to prevail on both grounds to obtain relief in this court.

Mr. Cisneros-Diaz notes that in the agency proceeding he said that he was afraid that "the [Salvadoran] authorities have been infiltrated and co-opted by gang members" and that he believes that those authorities "are simply incapable of protecting his particular social group." Reply Br. at 16–17. He argues:

> Neither the Judge, the Board, nor the government have ever addressed whether the efforts they refer to are actually sufficient to afford targeted individuals some semblance of protection. Though reports and articles in the record clearly demonstrate that the Salvadoran government is just overmatched, it is most likely beyond the purview of this Court to make such a finding when neither of the tribunals below even considered the question in its proper framing.

*Id*. at 17. His opening brief asserts:

> The record includes clear and consistent testimony, an expert affidavit, comprehensive reports from non-profit human rights organizations, and articles from the international press[, which] provide[] a more comprehensive picture of the human rights situation (than the single State Department report relied upon by the Judge), reporting in detail not only on the government's efforts, but on the utterly inadequate results of those efforts.

Aplt. Br. at 30 (footnote omitted) .

We are not persuaded. Mr. Cisneros-Diaz bore the evidentiary burden to establish that the government is unwilling or unable to protect him. *See Bartesaghi-Lay*, 9 F.3d at 822. On this record, it was reasonable for the IJ and BIA to determine that he had not satisfied that burden. As already pointed out, he provided no first-hand information to support his fear. And the IJ reasonably read

-6-

the authoritative reports on El Salvador as likewise not supporting it. In particular, the IJ referred to a State Department issue paper on youth gangs in El Salvador, which states:

> [T]he Salvadoran government does not have a policy or practice of refusing assistance to persons who receive threats or are otherwise victims of gang violence. Additionally, the U.S. Embassy in San Salvador has no information to suggest that persons have been denied assistance from police authorities in relation to complaints they have made relating to gang violence or threats from gang members. . . . The Salvadoran government treats gang violence as a high priority, has expended considerable sums to address the issue, and has received technical assistance from the U.S. and other countries to improve its law enforcement capabilities.

Cert. Admin. R. at 133–34. The report later states that the "Salvadoran government's strong-hand law enforcement policy may be having a noticeable effect on gang behavior, and at least in the short term, in controlling gang violence." *Id.* at 139. A reasonable adjudicator presented with the evidence at Mr. Cisneros-Diaz's hearing would not be compelled to reach a conclusion contrary to the IJ's.

## III. CONCLUSION

We DENY the petition for review and GRANT the motion to proceed *in forma pauperis*.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge