**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**June 20, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

MARIA AVILES-GONZALEZ,

    Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,

    Respondent.

No. 23-9547
(Petition for Review)

_____

## ORDER AND JUDGMENT[*]
_____

Before **PHILLIPS**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

Petitioner Maria Aviles-Gonzalez seeks review of the Board of Immigration

Appeals's (BIA) decision affirming an Immigration Judge's (IJ) denial of her

applications for asylum, withholding of removal, and convention against torture

protection.  She argues that the BIA and the IJ erred in denying her claims on the grounds

that she failed to show the Mexican government was unable or unwilling to protect her.

We have jurisdiction under 8 U.S.C. § 1252(a)(1), and we deny the petition for review.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**Background**

**A.      Factual background**

Ms. Aviles, an alien and Mexican citizen, fled her home country due to familial violence.  She testified that her brother, Fernando, sold drugs and was targeted by a criminal organization.  R. 138–40.  This group barged into Ms. Aviles's house, held the family at gunpoint, and repeatedly demanded Fernando's whereabouts — but he was absent.  Before leaving, the group threatened to kill Ms. Aviles and her family if they failed to turn over Fernando.  Fearing retaliation by the group, none of the family members contacted police.  Id. at 141.

The family began receiving threatening communications from the group demanding information about Fernando.  The group watched and occasionally followed family members.  One night, Fernando visited his family and informed them of his plans to leave town to evade the criminals.  The next morning, police found Fernando and his girlfriend murdered.

When the death threats continued, Ms. Aviles fled to the United States.  She attempted to enter four times.  Id. at 146.  Officials from the Department of Homeland Security (DHS) detained Ms. Aviles for trying to cross the border with false documents.  Id.  When asked by DHS whether she feared returning to Mexico, Ms. Aviles repeatedly said "no" out of fear that DHS would inform corrupt Mexican officials.  Id. at 146–47; Pet. Br. at 6.  At the time, Ms. Aviles was unaware that the United States allowed aliens to apply for asylum protection.  R. 147.  Due to her use of false documentation on her fourth attempt to enter, Ms. Aviles pled guilty to one count of fraud under 18 U.S.C.

2

§ 1546 and served 60 days in prison. Id. at 503–06. Upon learning of the availability of asylum, Ms. Aviles told DHS officials that she did, in fact, fear returning to Mexico. Id. at 147–48. Since entering the United States, several of Ms. Aviles's family members have been threatened, kidnapped, and even murdered because of their connection to Fernando. Id. at 148–52.

In 2014, DHS commenced removal proceedings against Ms. Aviles. In response, she timely filed an application for asylum.

### B.    Procedural history

As a threshold matter, the IJ made an adverse credibility determination against Ms. Aviles given her use of false documents when attempting to enter the United States and other misleading statements she made while being processed. Id. at 75–77. Despite the adverse credibility finding, the IJ noted "that the factual circumstances regarding her departure from Mexico and the circumstances surrounding the harm that she and her family experienced were corroborated." Id. at 76. The IJ denied asylum, in part, because Ms. Aviles failed to establish that the Mexican government would be unable or unwilling to protect her, so she could not demonstrate past persecution. Id. at 80–81. The IJ emphasized that she failed to contact police on several occasions given continuing threats and intimidation and that the Mexican government continues to fight against drug cartels with varying efficacy. Id. Ms. Aviles's inaction may have been motivated by concerns of futility and fear of retaliation, but it also suggested that the criminals were afraid of police action that might control the group's activities. Id. at 81. The IJ also concluded

that Ms. Aviles could not demonstrate a well-founded fear of future persecution necessary to qualify for asylum. Id. at 82.

Assuming Ms. Aviles's credibility, the BIA affirmed the IJ's decision, concluding that Ms. Aviles could not demonstrate past persecution. The BIA noted the IJ's finding that Ms. Aviles chose not to report her ordeal to the police and emphasized the inconsistencies between Ms. Aviles's statements that "she believed corrupt officers would pass along information to the gang members threatening her and her family," but later "that gang members would retaliate against her for reporting them to the police." Id. at 4. The BIA concluded it was permissible for the IJ to find that the criminals feared authorities learning of their criminal activities, such that the police could protect and prevent further harm to Ms. Aviles. Id. Ultimately, the BIA concluded that "on this record, the balance of the evidence is insufficient to satisfy the respondent's burden of proof" that the Mexican government was unwilling or unable to protect her. Id.

## Discussion

In this case, where a single BIA member issued a brief order affirming the IJ's decision, our scope of review is limited to the grounds relied upon by the BIA. Htun v. Lynch, 818 F.3d 1111, 1118 (10th Cir. 2016). The BIA concluded that Ms. Aviles had not demonstrated that the Mexican government was unwilling or unable to protect her. This was the dispositive issue, and the BIA did not consider the IJ's alternative bases for

denying asylum. R. 4. Thus, we consider only the BIA's conclusion that Ms. Aviles cannot demonstrate past persecution.[1]

Generally, "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." Uanreroro v. Gonzales, 443 F.3d 1197, 1204 (10th Cir. 2006). But we may consult the IJ's more complete explanation of these issues to better understand the BIA's discussion. See id. Because the BIA assumed Ms. Aviles's credibility, we do not consider the IJ's adverse credibility determination. See Maphilindo v. Holder, 323 F. App'x 659, 661 (10th Cir. 2009) (unpublished) (declining to consider IJ's credibility determination where BIA assumed witness's credibility).

### A.    Standard of review

We review legal questions de novo and the agency's fact-finding determinations for substantial evidence. Addo v. Barr, 982 F.3d 1263, 1268 (10th Cir. 2020). "Under the substantial-evidence standard, 'the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. (quoting 8 U.S.C. § 1252(b)(4)(B)). "[O]ur duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." Elzour v. Ashcroft, 378 F.3d 1143, 1150 (10th Cir. 2004). Whether an alien has sufficiently demonstrated persecution in their home country

---

[1] Before the IJ, Ms. Aviles also argued for withholding of removal under the Convention Against Torture, R. 10, but Ms. Aviles waived this claim before the BIA, see id. at 3 n.2. On appeal to this court, she concedes that "this aspect of the case is no longer in issue" — so we do not consider it. Pet. Br. at 1 n.1.

— the overarching issue here — is a question of fact. <u>Vicente-Elias v. Mukasey</u>, 532

F.3d 1086, 1091 (10th Cir. 2008).

### B.    Asylum

To qualify for asylum under 8 U.S.C. § 1158(b)(1)(B), Ms. Aviles bears the

burden of establishing that she is a refugee, which necessarily requires a showing that she

has been "persecut[ed]" or has "a well-founded fear of persecution," <u>id.</u>

§ 1101(a)(42)(A).  "[T]o establish eligibility for asylum on the basis of past persecution,

an applicant must show: (1) an incident, or incidents, that rise to the level of persecution;

(2) that is on account of one of the statutorily-protected grounds; and (3) is committed by

the government or forces the government is either unable or unwilling to control." <u>Niang</u>

<u>v. Gonzales</u>, 422 F.3d 1187, 1194–95 (10th Cir. 2005) (citation omitted).

As the IJ and BIA found, Ms. Aviles never reported her ordeal to the police.

Without such reporting, we have no way of knowing how police would respond and

whether local police would be unable or unwilling to protect Ms. Aviles.  Ms. Aviles's

failure to report the ordeal is "not necessarily fatal" to her claim if she can otherwise

demonstrate that filing a police report would have been futile or dangerous.  <u>See</u> <u>In re C-</u>

<u>G-T-</u>, 28 I. & N. Dec. 740, 743–44 (B.I.A. 2023) (quoting <u>Rosales Justo v. Sessions</u>, 895

F.3d 154, 165 (1st Cir. 2018)).  But she has not made this showing.  When asked why the

authorities would not protect her, Ms. Aviles responded that she knew others in her town

who reported violence to the police "and the police did not do anything.  On the contrary,

these people were killed even faster after having gone to the police." R. 565.  When

asked further to give "an example of someone that this happened to[,]" Ms. Aviles responded, "I don't know their names or addresse[s].  Just people I have heard about." Id.  Ms. Aviles's subjective belief regarding police inaction is insufficient without more specific evidence.

Ms. Aviles has provided no examples of futility or retaliation (by police or criminals) in response to police contact initiated by her family or another member of her community.  Instead, the bulk of the record contains reports of government corruption and violence in Mexico.  Without more specific examples, these generalized incidents of violence are insufficient to demonstrate the government's inability to protect her.  See Ritonga v. Holder, 633 F.3d 971, 977–78 (10th Cir. 2011); Cisneros-Diaz v. Holder, 415 F. App'x 940, 943–44 (10th Cir. 2011) (unpublished) (rejecting asylum claim where petitioner presented documents addressing general inadequacies of government's efforts but failed to present any first-hand information); Galloso v. Barr, 954 F.3d 1189, 1192–93 (8th Cir. 2020) (reasoning that reports about violence against women in Mexico were too general for petitioner to show government was unable or unwilling to help after petitioner refused to contact police).  We cannot say that that "any reasonable adjudicator would be compelled to conclude to the contrary[.]"  8 U.S.C. § 1252(b)(4)(B).[2]

---

[2] We likewise conclude that the BIA correctly denied Ms. Aviles's application for restriction on removal which "requires a petitioner to meet a higher standard than that for asylum."  Batalova v. Ashcroft, 355 F.3d 1246, 1255 (10th Cir. 2004); see also Wiransane v. Ashcroft, 366 F.3d 889, 894 (10th Cir. 2004) ("[W]hen an applicant fails to establish the objective component of a well-founded fear of persecution, he necessarily fails to establish entitlement to restriction on removal.").

The IJ and BIA could also reasonably infer that Ms. Aviles's fear of retaliation from the criminal group undercut the notion that police were unable or unwilling to protect her. R. 4, 81. Government officials and police came to the scene of Fernando's murder, id. at 410, forensic medicine personnel performed a legally required autopsy, id., and government officials investigated the death of Ms. Aviles's cousin, id. at 401. That the BIA chose not to reference this specific evidence is irrelevant. See Hadjimehdigholi v. I.N.S., 49 F.3d 642, 648 n.2 (10th Cir. 1995) ("[T]he BIA is not required to discuss every piece of evidence when it renders a decision."). The IJ and BIA considered the evidence in the record, see R. 4, 75, and "[a]bsent any indication to the contrary, we presume BIA members do their job thoroughly." Batalova v. Ashcroft, 355 F.3d 1246, 1252 (10th Cir. 2004).

Accordingly, the petition for review is DENIED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge